## STATE ex rel HARTE-HANKS v. AUSTIN
Case No. 83-207 CA
Fourth Judicial Circuit, Duval County
January 18, 1983

E. McRae Mathis, Assistant State Attorney, for plaintiff, State.

Harold B. Wahl, for petitioner, Harte-Hanks Communications, Inc.

Al Millar, Jr., Rodney E. Gaddy, Assistant Public Defender, for defendants.

A.C. SOUD, JR., Circuit Judge.

---

This cause came on for hearing upon the Petition for Writ of Mandamus filed by the Petitioner, Harte-Hanks Communications, Inc., hereinafter referred to as TV-12.

Hearings and persuasive arguments of able counsel were heard on January 4, January 5, and January 12, 1983.

William Richard Munson, Juanita Lee Munson, and Mary Leggett Conley, Defendants in related criminal prosecutions, together with their attorneys, were present by Order of this Court for reasons hereinafter explained.

The facts setting the scene for this dispute are as follows:

On December 7, 1982, William Munson and Juanita Munson were arrested for child selling Mrs. Munson's 5-year-old daughter. Mr. Munson was also charged with forging the child's natural father's signature on a legal document. Mary Conley was charged with fraudulent notarization of that signature. Their cases are case numbers 82-11084-CF, 82-11085-CF, 82-11086-CF, and 82-11083-CF respectively, presently pending in the Duval County Circuit Court. At the time of the alleged sale, investigators of the State Attorney's Office in cooperation with the alleged buyers of that child videotaped, with sound, the meeting of the Munsons with the said buyers and their entrance into Conley's office for the signing of legal documents. One of the purchasers had a body-bug implanted on her person which transmitted to surveilling investigators all statements and conversations on the date of the alleged sale. The videotape is 42 minutes long. During the Christmas holidays, the State Attorney gave a copy of said videotape to NBC with an agreement that only an 8-second segment could be aired nationally for a special report on child selling issues. NBC further agreed not to distribute the videotape to its Jacksonville station affiliate — WJKS, Channel 17. NBC has adhered to this agreement.

Thereafter, local station TV-12 requested a copy of the same for airing which was denied by the State Attorney. TV-12 filed a Motion in the criminal prosecution cases requesting the Court to authorize the State Attorney's Office to release same arguing that the videotape was a public record. That Motion was denied because TV-12 had no standing to file such a Motion in those cases. Thereupon, this Petition for Writ of Mandamus was filed requesting this Court to order the State Attorney to allow Petitioner to inspect, examine, and copy said videotape.

Arguments presented at the Motion hearing were adopted at the Mandamus hearing and made a part of the record.

In the criminal prosecutions, Defendants have filed a Demand for Discovery and the State Attorney has filed his Response to Demand for Discovery listing said videotape as an item which was to be used at trial. The Munsons, through their attorney, have reviewed the videotape. Mrs. Conley has not.

The videotape has been viewed twice by this Court, *in camera*.

TV-12 has a viewing audience in Southeast Georgia and Northeast Florida of between 60,000 and 65,000 homes, which covers several counties. TV-12 argues that the videotape is a public record under the Public Records Acts, Florida Statute 119, since it has been brought to the attention of and viewed by two of the Defendants. It argues that denial of their request not only violates Florida Statute 119 but unconstitutionally closes it out of a record now public in a state prosecution; and that the release and airing thereof would not violate the Defendants' Constitutional guarantee to a fair and impartial trial.

The State Attorney argues that the videotape is not a public record, and even if it were, is exempt from the Public Records Act because it contains criminal investigative information.

The Defendants object to the release and airing of the videotape prior to trial, arguing that all or portions of it may be suppressed as illegally seized evidence and that the same, if aired, would deny them their right to a fair and impartial trial in the county where the crime was allegedly committed.

From the evidence adduced and arguments of counsel, this Court makes the following findings of fact:

A.   *The videotape is a public record within the meaning of Florida Statute 119* because it has been disclosed to and viewed by two of the Defendants pursuant to the discovery rules of the Florida Rules of Criminal Procedure.

B.   The videotape, though a public record, is *exempt from inspection,* examination, and copying as required by Florida Statute 119 because the same contains *active criminal investigative information.*

C.   The videotape is not *susceptible to excising* because the entire film contains an account of one continuous transaction of an alleged sale of a child with highly self-incriminating statements made by the Defendants throughout.

D.   The airing of the videotape in the 60,000 to 65,000 homes within the range of TV-12's broadcast would indelibly infect the minds of the viewers and hearers so as to prevent the Defendants from receiving a fair and impartial trial.

E.   The statements and conversations of the Defendants in the videotape are *so self-incriminating that they carry equivalent strength and weight as would a confession.* Community airing of this videotape would have the same effect in prejudicing the minds of prospective jurors as would a confession. A videotape of a Defendant committing an offense is equivalent to or greater than the Defendant saying he committed it.

F.   There is no alternative to denying access to this videotape, other than change of venue, which would preserve to the Defendants *their right to a fair and impartial trial* in the county where the alleged crime was committed.

G.   Denying access to the videotape is necessary to preserve Defendants' right to *a fair and impartial trial.*

## CONCLUSIONS OF LAW

1.   The videotape is a public record as defined in Florida Statute 119.011(1) and 119.07(1)(a). Documents released to Defendants through discovery proceedures by the State Attorney become public in a sense and are open for public inspection. *Statz v. Blankenship,* 407 So.2d 396 (4th, DCA, Fla., 1981), which interpreted Florida Statute 119.011(3)(c)(5). The doctrine of "stare decisis" requires that a Circuit Court wheresoever situate in Florida is equally bound by decisions of a District Court of Appeal regardless of its appellate district, particularly where the Circuit

Court's territorial District Court of Appeal has not spoken to the issue. *State v. Hayes,* 333 So.2d 51 (4th, DCA, Fla., 1976).

2. Active criminal investigative information is exempt from the operation of Florida Statute 119.07(3)(d). Any information revealing surveillance techniques or procedures is also exempt. Florida Statute 119.07(3)(f).

3. The right of the news media and the public to know all that transpires in a criminal case, beyond open Court proceedings, must be carefully weighed against the Defendants' right to a fair trial, but the Defendants' right to a fair trial should be given paramount consideration. *Estes v. Texas,* 85 Sup.Ct. 1628 (U.S.Sup.Ct., 1965); *Tallahassee Democrat v. Cooksey,* 371 So.2d 207 (1st, DCA, Fla., 1979); Sec. 16, Art. I, *Florida Constitution;* Sixth Amendment, *United States Constitution.* Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial court must take strong measures to ensure that the balance is never weighed against the accused. *Sheppard v. Maxwell,* 86 Sup.Ct. 1507 (U.S.Sup.Ct., 1966).

4. Trial Court has discretionary authority to seal all or part of a criminal court file if it finds there are compelling reasons to do so and provided the Court makes a full exploration of all relevant facts, opposing views, and possible alternatives considering always whether or not the sealing of the file or a portion thereof is so necessary to protect the right of the Defendant that the rights of the news media under the First Amendment must give way. *Tallahassee Democrat v. Cooksey,* 371 So.2d 207 (1st, DCA, Fla., 1979).

5. Upon a showing of good cause, the Court may at any time order that specified disclosures be restricted or deferred. *Florida Rules of Criminal Procedure* 3.220(h).

6. Access or closure issues involving the press require a showing (a) that the action is necessary to prevent a serious and imminent threat to the administration of justice, (b) that no alternatives are available other than change of venue, which would protect a Defendant's right to a fair trial; and (c) that the denial of access would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose. Limiting access to records or hearings can be established where the airing or publishing of same would pose a reasonable probability of prejudice to the Defendant. *Miami Herald v. Lewis,* No. 59,392 (Fla.Sup.Ct., September, 1982); *Gannett v. DePasquale,* 99 Sup.Ct. 2898 (U.S.Sup.Ct., 1979).

7. A Defendant has a Constitutional right to be tried in the county where the alleged crime was committed, and to a speedy and public trial by impartial jury. Sec. 16, Art. I, *Florida Constitution; Miami Herald v. Lewis,* No. 59,392 (Fla. Sup.Ct., September 2, 1982); 8 Media L. Rep. 2281 (Fla.Sup.Ct., 1982).

8. A Defendant has a right to be tried by a fair and impartial jury, that is, jurors who will be able to try the facts of the case free from any preconceived impression of it whatsoever, with minds pure and unprejudiced. A confession of the Defendant, published in the community in which he is to be tried, or the facts of the case, aired through such a convincing medium that infects the prospective juror's neutrality and impartiality with equivalent force and impact denies to the Defendant that right. *Singer v. State,* 109 So.2d 7 (Fla.Sup.Ct., 1959); Oliver v. State, 250 So.2d 888 (Fla.Sup.Ct., 1971); *Hay v. State,* 353 So.2d 836 (Fla.Sup.Ct., 1977); 99 Sup.Ct. 293 (U.S.Sup.Ct., 1978); *Rideau v. Louisiana,* 83 Sup.Ct. 1417 (U.S.Sup.Ct., 1963).

## JUDICIAL APPLICATION

POINT ONE:

TV-12's Petition for Writ of Mandamus cannot be denied on the basis that the videotape is not a public record. The *Satz* case, supra, lays that issue rest, and this Court is bound by that decision.

Nevertheless, some comment is necessary, because of the strenuous disagreement this Court has with that decision.

When the Public Records Act was amended by adoption of Senate Bill 1316, Chapter 79-187, Laws of Florida, relating to Section 119.011(3), Florida Statute, the following was said at the April 9, 1979, Senate-Judiciary-Criminal Committee approving the wording:

> "It provides that certain information, which is essentially docket information, continues to be opened. Name, date of arrest, the report of an initial crime incident, things of *that nature.* And on that, everybody is agreed to it." (*Emphasis added*)

Further reading of that Senate Bill which is a part of the record states at Page 5, "The committee substitute narrows the exemptions for *police records* to active criminal investigations . . . while excluding *certain preliminary data."* (*Emphasis added*) This clearly indicates that legislative intent was the exemption of certain investigative and intelligence information; but preliminary data, as listed in Florida Statute 119.011(3)(c)(1 — 6), was not to be considered exempt. Reference, of course, to

"preliminary data" concerned police reports or the like, not discovery documents initiated by Rule 3.220, Florida Rules of Criminal Procedure.

The obligation of a criminal investigative agency, to-wit: the State Attorney, to disclose any other record thereupon ceases, and logically so, because of the adversary nature of the case. From that point it seems the *Satz* case takes a grand leap to require the State Attorney to divulge the content of an audio tape in his possession simply because it has been disclosed and furnished to a criminal Defendant pursuant to the rules of discovery. There can be nothing "public" about that other than the document itself, entitled State's Response to Demand for Discovery, which document is in the Court file. The Defendant at that point still enjoys the Fifth Amendment right to silence. It is without merit to say that what he cannot be forced to say about himself, can be revealed to the whole world by the prosecutor simply because the Defendant made a request for same according to the Rules of Criminal Procedure in the preparation of his defense. Should a Defendant be placed in a position of foregoing his right to discovery for fear of the world knowing about him and what he has done? One must ponder this question: What can be inspected, examined, and copied from the Public Defender's file when he has furnished information to the State pursuant to the discovery rules?

The argument that all revealed through discovery to opposing counsel is public and whether it should be released to the public depends on a case by case basis as to the impact on Defendant's right to a fair and impartial trial, could severely impair the administration of justice where the Court would have to review each such request when made by whomever.

The clearer and more sensible rule would be that "documents" as used in 119.011(3)(c)(5) does not include any discovery document or evidence unless the same appears actually filed into the Court file.

POINT TWO:

The 42-minute videotape is exempt of inspection, examination, and copying by operation of Florida Statute 119.07(3)(d) because the same contains active criminal investigative information.

The Court has reviewed, in camera, the videotape question on two occasions. The State Attorney argued that the videotape contains the name of another child and another alleged sale, involving identifiable persons, obtained from the surveillance, all of which is still under active investigation. A review of the videotape confirms that position.

The tape reveals a meeting between the Defendants and the alleged buyers at a location near the Defendant Conley's notary public office. Thereupon, the Munsons and the buyers enter the premises of the Defendant Conley where they stay for approximately 30 minutes. Prior to entering, while inside, and upon exiting, the conversation and statements by all parties was transmitted and recorded as well as videotaped. There is a discussion of children, money, an adoption, a birth certificate, legal documents, signatures, and notorization of same. The entire 42 minutes encompasses one continuous transaction. The tape is not given to nor susceptible for excising.

POINT THREE:

The United States and the Florida Constitutions guarantee to the Defendants the right to a fair and impartial trial by jurors with minds, pure and unprejudiced.

The same Constitutions guarantee to each of us the freedom of the press. In considering this question, we must delicately balance the competing yet fundamental rights of an accused to a fair trial by impartial jury, and of the free press guaranteed by the First Amendment. The inherent conflict between these two rights is often a difficult one to resolve; and in so doing, a solution is sought that gives maximum importance to both interests.

An additional factor is the inherent power of this Court in guaranteeing to the Defendants their fundamental right to a fair trial. The question then is three dimensional, dealing with the power and authority of the Court, the rights of the Defendant, and the rights and interests of the public and press. Pervading all of this is the State of Florida's commitment to open government.

The principle that justice cannot survive behind walls of silence has long been reflected in the "Anglo-American distrust for secret trial." *In re Oliver,* 68 Sup.Ct. 499 (U.S.Sup.Ct., 1948). "A responsible press has always been regarded as the handmaiden of effective judicial administration . . . The press does not simply publish information about trials but guards against the miscarriage of justice . . . what transpires in the courtroom is public property." *Sheppard v. Maddox,* 86 Sup.Ct. 1507 (U.S.Sup.Ct., 1966).

The instant case, of course, is in pre-trial posture. The Munsons have filed Motions to Suppress the videotape. One is expected from Defendant Conley. It is possible that portions, if not all of the videotape, may be suppressed and, therefore, never used at trial. An ever present reality and concern is the impact and negative effect the airing of the videotape, with broadcasts and comments, would have on the viewers who may be

called as jurors. This videotape and its content must be regarded much like a "confession" that is aired publicly. A confession is a statement by the Defendant as to how, why, and when he did it. A videotape is a visible record of him doing it. The weight and convincing nature of what is heard and seen, in the respective instance, is equal. That being true, the airing of the videotape into the community where the Defendant is to be tried, would therefore require the Court to change venue when requested, *Oliver,* supra; and that would deprive the Defendant of the Constitutional right to be tried in the county where the crime was allegedly committed. The fact that venue can be transferred is not an available, alternative procedure which would otherwise justify TV-12 access to the videotape. The *Satz* case urges that this videotape is a public record in this prosecution proceeding. Because this case is still pre-trial, the press' access to it must be treated just like the right of the press to attend pre-trial hearings. There is no such Constitutionally, protected right; and this non-Constitutional privilege of the press should not be elevated above the Constitutional right of the Defendant to be tried in the county where the crime was committed. *Miami Herald v. Lewis,* supra.

This Court has considered available alternatives in lieu of denying TV-12 access to the videotape, which would still preserve the Defendants' Constitutional guarantees. There are none.

This Court could permit access to the tape, and if there is a conviction, await ruling by the appellate court as to whether or not the Defendants received a fair and impartial trial in the county where the crime was committed, in view of the airing of that tape. The *Sheppard* court, supra, said, " . . . reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception."

The press will have access. The government will remain open. The public's interest will not be withheld. However, the paramount Constitutional rights of the Defendant are compelling and require they be deferred until this case moves from pre-trial to trial posture.

Upon consideration of the foregoing, it is, thereupon,

ORDERED AND ADJUDGED:

That Harte-Hanks Communications, Inc.'s (Television 12 of Jacksonville, Inc.) Petition for Writ of Mandamus be and the same is hereby denied.