DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA**,
Petitioner,

v.

**TASHANE M. CHANTILOUPE**,
Respondent.

No. 4D18-162

[June 6, 2018]

Petition for writ of prohibition or certiorari to the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 502017CF006914AXXXMB.

Pamela Jo Bondi, Attorney General, Tallahassee, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, for petitioner.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for respondent.

KUNTZ, J.

The State petitions for a writ of prohibition or a writ of certiorari to quash the circuit court's order refusing to allow it to file an untimely notice of intent to seek the death penalty. We agree with the State that the circuit court incorrectly concluded it lacked authority to enlarge the forty-five-day deadline to file a notice of intent to seek the death penalty. But, based on the specific facts of this case, we cannot conclude the circuit court departed from the essential requirements of the law when it declined to exercise its discretion and grant the State's request for extension. Thus, we deny the petition.

### *Background*

The Palm Beach State Attorney's Office indicted the Defendant on charges of first-degree murder with a firearm and being a felon in possession of a firearm. The date of his arraignment was August 18, 2017, which is critical to the resolution of this petition because both section 982.04(1)(b), Florida Statutes (2017), and Florida Rule of Criminal

Procedure 3.181, allow the State forty-five days from the date of arraignment to file a notice of intent to seek the death penalty.

Fifty-six days after arraignment, the Defendant moved to preclude the State from seeking the death penalty. The State responded three days later by moving for leave to file a notice to seek the death penalty. In its four-paragraph motion, the State listed two aggravating factors, which included a prior conviction and evidence that the Defendant planned his acts in advance. The State also asserted that "[i]t has been approximately 59 days since the Defendant's arraignment on these charges. Discovery has just begun and no depositions have been taken of any witness. The Defendant is not prejudiced by the delay of 14 days." In other words, the State provided no basis for the extension, nor any cause for failing to seek the extension until after the deadline had passed.

The court held a hearing on the competing motions. It pointed out that the State knew of the two aggravating factors upon which it sought leave at the time of indictment. The State asked for additional time to file a supplemental memorandum because, they stated, "it's an important issue, and the language is really odd in the statute." After a colloquy, the court responded, stating "unless they can show excusable neglect, and perhaps you could argue, judge, excusable neglect in this case, but you haven't made that. And I don't think 'I'm continuing my investigation' is excusable neglect." Nevertheless, the court ultimately allowed the State additional time to file a supplemental memorandum.

The supplemental memorandum was filed as the State's motion to deny defendant's motion to preclude the State from seeking the death penalty. While acknowledging it was untimely, the State argued there would be no prejudice to the Defendant:

> The defendant asks this Court to impose the harshest punishment available, i.e., prohibit the State from seeking the appropriate sentence of death in this case simply because the state filed its Notice To Seek The Death Penalty fourteen days late. The State acknowledges that pursuant to Fla. Stat. § 782.04(1)(b) and Fla. R. of Crim. Pro. 3.181, the Notice is untimely, however, the two-week delay has not in any way prejudiced the defendant, nor has it violated any of his constitutional rights.

This five-page memorandum, like the original four-paragraph motion, failed to provide a reason to extend the deadline and focused on the legality of extending the forty-five-day deadline.

2

The court held a continued hearing after the State filed its supplemental memorandum, at which time the State raised excusable neglect for the first time:

> [Assistant State Attorney]: One of the things I wanted to put on the record, although we didn't plead it, is you mentioned early in the week about excusable negligence.
>
> THE COURT: Excusable neglect.
>
> [Assistant State Attorney]: Neglect, I'm sorry. That I didn't argue that, but I know that the court knows in that 45 days immediately following the arraignment, this courthouse was shut down because we suffered a hurricane. And then -
>
> THE COURT: So I can give you those extra six days or whatever.
>
> . . .
>
> [Assistant State Attorney]: And then the day after the hurricane before the courthouse was even reopened, I left the country for two weeks. I didn't plead that.

On excusable neglect, the court orally found that it appeared "the prosecutor forgot the time line or forgot" and that "even with the good faith exception, I would find against you, in this, under the facts of this case." In other words, even if the court believed it had the authority to extend the deadline it would not have done so because it did not think that the State had shown good cause or excusable neglect.

The court took the issue under advisement to allow it time to review the State's supplemental memorandum. The court then issued a detailed order granting the Defendant's motion to preclude the State from seeking the death penalty and denying the State's motion for enlargement. The State filed this petition for writ of prohibition or certiorari asking that we quash the court's order.

### Analysis

The State seeks the issuance of a writ of prohibition or, alternatively, a writ of certiorari. We begin our analysis with the standard of review applicable to each. Second, we consider the evolution and the language of

3

the governing statute and rule. Third, we apply the statute and rules and hold the court incorrectly concluded it lacked jurisdiction to extend the deadline. Fourth, we consider whether the court departed from the essential requirements of the law when it declined to exercise its discretion to extend the deadline and conclude the court did not.

### 1. Standard of Review

"The state attorney has complete discretion in making the decision to charge and prosecute." *Cleveland v. State*, 417 So. 2d 653, 654 (Fla. 1982). A writ of prohibition is appropriate if a trial court interferes with the prosecutor's discretion by refusing to allow a first-degree murder prosecution to proceed as a capital case. *State v. Bloom*, 497 So. 2d 2, 3 (Fla. 1986) ("A writ of prohibition is the appropriate remedy when a trial court attempts to interfere with the prosecutorial discretion of a state attorney."); *see also State v. Lopez*, 219 So. 3d 865 (Fla. 4th DCA 2017).

A writ of certiorari may also be appropriate to review certain "non-final orders of lower tribunals other than as prescribed by rule 9.130." Fla. R. App. P. 9.030(b)(2)(A). The "extraordinary writ is reserved for those situations where there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." *State v. Pettis*, 520 So. 2d 250, 254 (Fla. 1988). A petition for writ of certiorari requires the State to establish the court departed from the essential requirements of the law in a way that results in material injury to the remainder of the case and that cannot be remedied on post-judgment appeal. *See, e.g., State v. Pettis*, 520 So. 2d 250, 253 (Fla. 1988); *Lake v. State*, 193 So. 3d 932, 933 (Fla. 4th DCA 2016).

### 2. Rule 3.202(a), Rule 3.181, and Section 782.04(1)(b), Florida Statutes: The Forty-Five-Day Deadline to File a Notice of Intent to Seek the Death Penalty

In 1995, the Florida Supreme Court enacted Florida Rule of Criminal Procedure 3.202(a), which stated:

> (a) Notice of Intent to Seek Death Penalty. The provisions of this rule apply only in those capital cases in which the state gives written notice of its intent to seek the death penalty within 45 days from the date of arraignment. Failure to give timely written notice under this subdivision does not preclude the state from seeking the death penalty.

*Amendments to Fla. Rule of Criminal Procedure 3.220 Discovery*, 674 So.

4

2d 83, 84 (Fla. 1995). This rule remained in place until 2016 when the Supreme Court of the United States found Florida's "sentencing scheme" unconstitutional. *Hurst v. Florida*, 136 S. Ct. 616, 624 (2016).

As a result of *Hurst*, the legislature amended Florida's capital-punishment statute. The legislature codified a requirement that the State file a notice of intent to seek the death penalty:

> (b) In all cases under this section, the procedure set forth in s. 921.141 shall be followed in order to determine sentence of death or life imprisonment. If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.

Ch. 2016-13, § 2, Laws of Fla. (enacting § 782.04(1)(b), Fla. Stat. (2016)). The statute provides that a notice of intent to seek the death penalty must be filed within forty-five days after arraignment. In other words, the legislative enactment incorporated Rule 3.202(a) into the Florida Statutes.

After the legislature enacted section 782.04(1)(b), the Florida Supreme Court amended the rules. It amended Rule 3.202 and added new Rule 3.181. In *In re Amendments to Florida Rules of Criminal Procedure*, 200 So. 3d 758, 759 (Fla. 2016), the court stated that the amendments "implement chapter 2016–13, section 2, Laws of Florida." The court's opinion also noted that the changes included the "removal [of] language from existing rule 3.202(a) in order to avoid possible conflict with the statute and new rule." *Id.* The Appendix to the court's opinion shows the amendments to Rule 3.202 and new Rule 3.181:

**APPENDIX**

**RULE 3.181. NOTICE TO SEEK DEATH PENALTY**

In a prosecution for a capital offense, if the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant of the state's intent to seek the death penalty. The notice must be filed with the court within 45 days of arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it

5

can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.

[ . . . ]

**RULE 3.202. EXPERT TESTIMONY OF MENTAL MITIGATION DURING PENALTY PHASE OF CAPITAL TRIAL; NOTICE AND EXAMINATION BY STATE EXPERT**

**a) Notice of Intent to Seek Death Penalty.** The provisions of this rule apply only in those capital cases in which the state gives timely written notice of its intent to seek the death penalty ~~within 45 days from the date of arraignment. Failure to give timely written notice under this subdivision does not preclude the state from seeking the death penalty~~.

**(b)–(e) [No Change]**

*Id.* at 759-60.[1]

### 3. A Court May Extend the State's Forty-Five-Day Deadline to File a Notice of Intent to Seek the Death Penalty

With this foundation set, we now determine whether a trial court may extend the deadline imposed by section 782.04(1)(b), Florida Statutes (2017), and Florida Rule of Criminal Procedure 3.181. "The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review." *Kasischke v. State*, 991 So. 2d 803, 807 (Fla. 2008); *see also State v. Nelson*, 26 So. 3d 570, 573–74 (Fla. 2010) (applying de novo review to the Florida Rules of Criminal Procedure).

"Substantive law prescribes the duties and rights under our system of government. . . . Procedural law concerns the means and method to apply and enforce those duties and rights." *Benyard v. Wainwright*, 322 So. 2d 473, 475 (Fla. 1975). Generally, substantive rules fall under the authority of the legislature; whereas procedural rules relating to the court system are within the authority of our supreme court. That said, the legislature can repeal any rule of court by a two-thirds vote. Art. V, § 2, Fla. Const. ("Rules of court may be repealed by general law enacted by two-thirds vote of the membership of each house of the legislature."); *see also State v.*

---

[1] "New language is indicated by underscoring; deletions are indicated by struck-through type." *Id.* at 759.

6

*Raymond*, 906 So. 2d 1045, 1051 (Fla. 2005) ("Although the Legislature may repeal a court procedural rule, it cannot create a new procedural rule by statute.").

Time limits and requirements fall into both categories. Some time limits are procedural, while others are substantive. *Splash & Ski, Inc. v. Orange Cty.*, 596 So. 2d 491, 495 (Fla. 5th DCA 1992). For example, the power to establish time limitations for bringing some actions resides with the legislature. *See, e.g.*, § 775.15, Fla. Stat. (2017). But when the legislature intends a time bar to be jurisdictional, it generally states as much. *See, e.g.*, § 194.171(2), Fla. Stat. (2017). Here, in section 782.04(1)(b), the legislature did not expressly state that it intended the forty-five-day time limit to be a substantive bar on seeking the death penalty. Nor did the legislature repeal the then-existing provisions of Rules 3.050 and 3.202, which permitted an enlargement of time. Because no party asserts the time limit is within the exclusive authority of either branch, we evaluate each and assume both to be valid.

First, the statute. Section 782.04(1)(b) appears to require the state file a timely notice of intent. It specifically allows the state to amend a notice but it neither provides a procedure for obtaining an extension, nor does it prohibit seeking an extension. It should be noted that other substantive statutes that authorize the state to seek the death penalty do not do so, either. *See, e.g.*, §§ 775.082, 921.141(1), Fla. Stat. (2017).

Second, we turn to Rule 3.181. Again, our supreme court enacted this rule after the legislature codified section 782.04(1)(b). While Rule 3.181 provides no mechanism for seeking an enlargement of time to file a notice of intent to seek the death penalty, it also does not prohibit enlarging the deadline.

The State argues this *lack* of a prohibition in section 782.04(1)(b) and Rule 3.181 means enlarging the deadline is permissible. It relies on *Massey v. State*, 609 So. 2d 598, 600 (Fla. 1992), where our supreme court found the failure to comply with the notice requirements for habitual felony offender sentencing to be harmless. It also points to other situations in which mandatory notice requirements have not been strictly applied. *State v. Naveira*, 873 So. 2d 300, 308 (Fla. 2004); *Small v. State*, 630 So. 2d 1087, 1088–89 (Fla. 1994). We note that a statute may present a mandatory but non-jurisdictional deadline. *State v. Goode*, 830 So. 2d 817, 828 (Fla. 2002) (holding that time limit for bringing a defendant to trial in a Jimmy Ryce civil commitment proceeding was mandatory but not jurisdictional).

The Defendant attempts to distinguish these cases. He argues in *Massey* "habitual offender sentencing is a simple matter involving no hugely expensive investigations and litigation or extended hearings, so that the state may serve the notice any time before the sentencing hearing. Hence, there is no need for the notice to be served early in the case." As for *Naveira*, he states "in that case the supreme court ruled that the time periods in the speedy trial rule must be applied strictly. It wrote that the rule does not incorporate the reasonableness and prejudice standards which apply to the constitutional speedy trial provision." (emphasis omitted). The Defendant also generally addresses many of the other cases the State relies on, arguing that the cases are "beside the point" and that here "we are concerned with the death penalty statute, an area uniquely within the ambit of the Legislature."

We think the conclusion is simpler. And it is found in a different rule. Florida Rule of Criminal Procedure 3.050, which applies to all of the Florida Rules of Criminal Procedure, establishes a rule for enlarging deadlines:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for good cause shown may, at any time, in its discretion (1) with or without notice, order the period enlarged if a request therefor is made before the expiration of the period originally prescribed or extended by a previous order or (2) upon motion made and notice after the expiration of the specified period, permit the act to be done when the failure to act was the result of excusable neglect; but it may not, except as provided by statute or elsewhere in these rules, extend the time for making a motion for new trial, for taking an appeal, or for making a motion for a judgment of acquittal.

This rule provides the trial courts with broad discretion to extend any deadline imposed by the rules, except for specifically-enumerated exceptions. Our supreme court has applied Rule 3.050 to extend deadlines in other rules not specifically excluded from the rule. *Davis v. State*, 887 So. 2d 1286, 1289 (Fla. 2004); *see State v. Boyd*, 846 So. 2d 458 (Fla. 2003); *Abreu v. State*, 660 So. 2d 703 (Fla. 1995).

The deadline to file a notice of intent to seek the death penalty is not a specifically-enumerated exception. Thus, the court incorrectly concluded that it lacked the authority to extend the deadline. We hold that Rule

8

3.050 provides authority for a circuit court to extend the deadline to file a notice of intent to seek the death penalty.

### *4. The Court Did Not Depart From the Essential Requirements of the Law When it Denied The State's Motion to Enlarge the Deadline to File a Notice of Intent to Seek the Death Penalty*

Despite our conclusion that the circuit court here had the authority to extend the deadline, the State's petition must still be denied unless the court departed from the essential requirements of the law when it denied the State's motion.

Before addressing the court's decision, we again present the various events at issue chronologically:

- August 3, 2017 – Indictment;
- August 18, 2017 – Arraignment;
- September 7-13, 2017 – Fifteenth Circuit closed because of Hurricane Irma;
- October 2, 2017 – Deadline for State to file notice of intent to seek death penalty;
- October 13, 2017 – Defendant's motion to preclude the State from seeking the death penalty;
- October 16, 2017 – State's motion for leave of court to file and to seek the death penalty;
- October 16, 2017 – State's notice of intent to seek death penalty;
- October 23, 2017 – Hearing held;
- October 27, 2017 – State's motion to deny Defendant's motion to preclude State from seeking the death penalty;
- October 27, 2017 – Hearing continued; and
- December 15, 2017 – Order precluding State from seeking the death penalty.

It is undisputed that the deadline here expired before the State sought to enlarge it. And after the deadline "has expired, rule 3.050 allows a trial judge to permit the untimely filing of a motion upon a showing of 'good cause,' 'when the failure to act was the result of excusable neglect.' Before the expiration of the [time] period, a defendant must show only 'good

9

cause.'" *Parker v. State*, 907 So. 2d 694, 695 (Fla. 4th DCA 2005) (quoting *State v. Boyd*, 846 So. 2d 458 (Fla. 2003)). Thus, the burden on the movant is more stringent when seeking to enlarge a deadline that has already lapsed. *Id.*

Our understanding of Rule 3.050 and the additional requirements on a movant seeking to enlarge a lapsed deadline is consistent with our supreme court's recent discussion of the analogous civil rule, Florida Rule of Civil Procedure 1.090. *Koppel v. Ochoa*, 43 Fla. L. Weekly S225 (Fla. May 17, 2018). In *Koppel*, the supreme court explained that "Rule 1.090 allows for the time period set forth in [other rules] to be enlarged, but this enlargement is at the trial court's discretion if the motion was filed before expiration of the time period and cause has been shown." *Id.* But, the court stated, "[a]fter the time period has expired, the trial court still has discretion to enlarge the time period if the moving party can demonstrate excusable neglect in addition to cause." *Id.*

Because it sought to enlarge a lapsed deadline, the State needed to establish both good cause and excusable neglect. The State made two arguments in its motion for leave, which we presume to be an attempt to show good cause. Its four-paragraph motion listed two aggravators, including a prior conviction and evidence that the Defendant planned his acts in advance. But, as the court found in its order, "at the hearings, the State acknowledged that it was in possession of the evidence supporting the two aggravating circumstances alleged in its Notice at the time it returned its Indictment against" the Defendant.

The State conceded to the circuit court that it made no arguments about excusable neglect in its written motion.[2] The State did make two oral arguments at the hearing directed to excusable neglect: first, the effect of Hurricane Irma; and second, and in passing, a two-week trip counsel began before the court reopened after Hurricane Irma.

First, the State argued that the court should have enlarged the deadline based on the effect of Hurricane Irma. Indeed, Hurricane Irma caused serious impact throughout the State of Florida, but the Florida Supreme Court's tolling order relating to Hurricane Irma for the Fifteenth Judicial Circuit extended deadlines from September 6, 2017 until September 14, 2017. The order specifically states that "the extension of time periods

---

[2] To extend a lapsed deadline, Rule 3.050 requires a motion and notice. On the other hand, to extend a deadline that has not yet lapsed, Rule 3.050 specifically states that notice is not required. We assume for purposes of this opinion that the State's failure to address excusable neglect in its motion was not dispositive.

under this order shall apply only when the last day of those periods falls within the time extended." The tolling order does provide a potential remedy for other deadlines not met because of the hurricane, stating "[i]f such a claim is made, it shall be resolved by the court in which jurisdiction is vested on a case-by-case basis when a party demonstrates that the lack of compliance with requisite time periods was directly attributable to this emergency and that equitable remedy is required."

Here, the State did not seek to establish the failure to file the notice was directly attributable to Hurricane Irma. The State did not even mention the hurricane in its motion. Not until the court asked about excusable neglect did the State raise the hurricane as a potential reason. In any event, Hurricane Irma caused a closure of the Fifteenth Judicial Circuit from "Thursday, September 7, 2017, through Wednesday, September 13, 2017." The deadline to file the notice of intent did not run until nineteen days after the court had reopened.

Second, at the continued hearing, counsel for the State stated that "the day after the hurricane before the courthouse was even reopened, I left the country for two weeks. I didn't plead that." Based on counsel's statement, she returned well before the deadline to file the notice. Even so, this argument was not raised in a motion or argued at the hearing. It was merely a comment in passing and one upon which the State did not otherwise rely.

Our supreme court has explained good cause as "a substantial reason, one that affords a legal excuse, or a cause moving the court to its conclusion, not arbitrary or contrary to all the evidence, and not mere ignorance of law, hardship on petitioner, and reliance on another's advice." *State v. Boyd*, 846 So. 2d 458, 460 (Fla. 2003) (quotation omitted). Here, the State's motion to enlarge the deadline contained no assertion of excusable neglect nor good cause. Thus, we cannot conclude that the court departed from the essential requirements of the law when it determined the State failed to meet its burden and denied the State's motion for an extension to file the belated notice of intent to seek the death penalty.

### *Conclusion*

To grant the State's petition and quash the circuit court's order, we must accept both arguments presented by the State: first, that the court improperly concluded it lacked the authority to extend the deadline for the State to file a notice of intent to seek the death penalty; and second, the court erred in refusing to extend the deadline.

First, we agree with the State that a court may extend the deadline to file a notice of intent to seek the death penalty. Section 782.04(1)(b), Fla. Stat. (2017) and Florida Rule of Criminal Procedure 3.181 (2017) require the state to file a notice of intent to seek the death penalty within forty-five days of arraignment. But Florida Rule of Criminal Procedure 3.050 (2017) allows a court to extend the forty-five-day deadline.

Second, we conclude the court did not depart from the essential requirements of the law when it concluded that "the State has failed to allege a good faith delay, excusable neglect, or any other circumstances which justify the filing of the Notice more than 45 days after the date of arraignment."

Because the court did not depart from the essential requirements of the law when it denied the State's motion for extension, the petition is denied.

*Petition denied.*

TAYLOR and CONNER, JJ., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

12