DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Petitioner,

v.

**JAMELL DEMONS,**
Respondent.

No. 4D22-1874

[November 9, 2022]

Petition for writ of prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 19-1872CF10A.

Ashley Moody, Attorney General, Tallahassee, and Leslie T. Campbell, Senior Assistant Attorney General, West Palm Beach, for petitioner.

Philip R. Horowitz of the Law Offices of Philip R. Horowitz, Miami, for respondent.

LEVINE, J.

In 2019, the defendant was indicted for two counts of first-degree murder with a firearm. The state filed a timely notice of intent to seek the death penalty, which included the aggravating factors the state would rely on while seeking the death penalty. In 2022, a superseding indictment added a sentencing enhancement for benefiting, promoting, or furthering the interests of a criminal gang. Since the state did not file another notice of intent to seek the death penalty after filing the superseding indictment, the trial court granted the defendant's motion to preclude the state from seeking the death penalty. The state filed a writ of prohibition arguing the trial court exceeded its authority. We agree.

We find that the state complied with its statutory obligations when it filed its notice of intent to seek the death penalty within 45 days of arraignment. The fact that the state filed a superseding indictment, requiring a second arraignment, does not vitiate the already filed and timely notice of intent. Notice is notice. The superseding indictment was clearly a continuation of the original indictment. The state did not nolle

prosse the original indictment, nor did it add aggravating factors to the required notice seeking the death penalty. We find the trial court erred by precluding the state from seeking the death penalty, and thus, grant the writ of prohibition.[1]

In February 2019, the defendant was indicted by a grand jury on two counts of first-degree murder with a firearm. Within 45 days of the defendant's arraignment, the state timely filed its notice of intent to seek the death penalty in accordance with section 782.04(1)(b), Florida Statutes (2018), and Florida Rule of Criminal Procedure 3.181, listing four aggravating factors: (1) the capital felony was committed for pecuniary gain, (2) the capital felony was especially heinous, atrocious, or cruel, (3) the capital felony was a homicide and was committed in a cold, calculated, and premediated manner without any pretense of moral or legal justification, and (4) the capital felony was committed by a criminal gang member.

In February 2022, the state sought to amend its notice of intent to seek the death penalty. The state sought to limit one previously listed aggravator to apply to only one victim and to add the following aggravator: that the defendant was previously convicted of another capital felony involving the use or threat of violence to the person. The trial court denied the motion. Several days later, the state filed a superseding indictment, again alleging two counts of first-degree murder with a firearm and adding a sentencing enhancer that the defendant had committed the offenses "for the purpose of benefiting, promoting, or furthering the interests of a criminal gang." § 874.04, Fla. Stat. (2018). The defendant was rearraigned under the superseding indictment.

Thereafter, in April 2022, more than 45 days after rearraignment, the defendant filed a motion to preclude the state from seeking the death penalty, arguing that the state had failed to timely provide notice of intent to seek the death penalty under the superseding indictment and accompanying rearraignment. The state responded that it did not need to file a second notice of its intent to seek the death penalty following the superseding indictment and that it would be improper for the court to foreclose the death penalty as a possible penalty in this case.

The trial court granted the defendant's motion and precluded the state from seeking the death penalty. The trial court relied on *State v. Chantiloupe*, 248 So. 3d 1191 (Fla. 4th DCA 2018), for the proposition that

---

[1] Due to our granting the state's petition for writ of prohibition, we need not rule on the state's accompanying petition for writ of certiorari.

it could preclude the state from seeking the death penalty as a proper remedy if notice was not given. Further, the trial court stated that an amended information ended legal proceedings on the original information, rendering the state's original notice of intent to seek the death penalty without any legal effect.

The state filed an emergency petition for writ of prohibition, stating that the trial court acted in excess of its jurisdiction by reading a requirement of re-notification into the statute and procedural rule in the present case, where there was a superseding indictment. The state argues that it did not need to file a second notice of intent and that it would be improper to foreclose seeking the death penalty.

We review the legal question presented in the state's writ of prohibition de novo. *Sutton v. State*, 975 So. 2d 1073, 1076 (Fla. 2008). A writ of prohibition is appropriate "if a trial court interferes with the prosecutor's discretion by refusing to allow a first-degree murder prosecution to proceed as a capital case." *Chantiloupe*, 248 So. 3d at 1195. We also review de novo the trial court's interpretation of statutes. *D.A. v. State*, 11 So. 3d 423, 423 (Fla. 4th DCA 2009).

We start our review with the understanding that "[t]he state attorney has complete discretion in making the decision to charge and prosecute." *Cleveland v. State*, 417 So. 2d 653, 654 (Fla. 1982). However, in order for the state to seek the death penalty, the state must comply with section 782.04(1)(b), Florida Statutes, and Florida Rule of Criminal Procedure 3.181.

Section 782.04(1)(b) states:

> In all cases under this section, the procedure set forth in s. 921.141 shall be followed in order to determine sentence of death or life imprisonment. If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.

Florida Rule of Criminal Procedure 3.181 states:

3

> In a prosecution for a capital offense, if the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant of the state's intent to seek the death penalty. The notice must be filed with the court within 45 days of arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.

To interpret a statute, we look at the plain language of the statute. *State v. Sampaio*, 291 So. 3d 120, 123 (Fla. 4th DCA 2020). Generally, courts need not look behind the statute's plain language when the statute is "clear and unambiguous." *Brown v. City of Vero Beach*, 64 So. 3d 172, 174 (Fla. 4th DCA 2011).

The plain language of section 782.04(1)(b) and rule 3.181 requires that the state give notice to the defendant if the state is seeking the death penalty. The defendant must also be notified of the aggravating factors the state intends to prove. The statute and the rule require that the notification occur within 45 days of arraignment. Here, the state timely filed its notice of intent to seek the death penalty within 45 days of the arraignment after the original indictment.

Nowhere does the statute or rule require the state, after a superseding indictment, to file an additional notification to the defendant that the state is seeking the death penalty. The statute and the rule are silent on requiring notifications on superseding indictments. Even assuming there was a theoretical reason to re-notify the defendant that the state is, once again, still seeking the death penalty when a superseding indictment merely adds a gang enhancement, the courts are without jurisdiction to add words to a statute which the legislature has not written. *State v. Estime*, 259 So. 3d 884, 888-89 (Fla. 4th DCA 2018). Applying the plain language of the statute and rule, it is clear that the state complied with the notice requirement, in order to seek the death penalty, by having filed the notice within 45 days of arraignment.

Further, the filing of an amended indictment does not nullify or void the original indictment. *State v. Calle*, 560 So. 2d 355, 356 (Fla. 5th DCA 1990) (recognizing that the filing of an amended information does not nolle prosse the original information); *see also State v. Clifton*, 905 So. 2d 172, 177 (Fla. 5th DCA 2005) ("The filing of an amended information differs significantly from a nolle prosequi, an announcement of 'no action,' and doing nothing to initiate prosecution because with the filing of an amended

4

information, there is no interruption in, or cessation of, the prosecution."). Similarly, in the present case, the mere filing of a superseding indictment did not nullify the original indictment. *See U.S. v. Flores-Perez*, 646 F. 3d 667, 671 (9th Cir. 2011) ("[A] superseding indictment does not nullify an original indictment."). Nor did it vitiate any of the notices already timely filed by the state.

In this case, there would be no need to re-notice the defendant upon the filing of a superseding indictment. The trial court retains jurisdiction over a prior indictment, and any resulting motions, even after a superseding indictment or amended information. *Calle,* 560 So. 2d at 356 ("Since the amended information supplants or replaces the original, there is no merit to Calle's argument that the court had no jurisdiction over him and that no case existed in the absence of an arraignment upon the amended information."). In this case, the original indictment was not nullified, and as such, the trial court retained jurisdiction over the case including the state's timely filed notice of intent. *Id.* Of course, if the state had nolle prossed the charges filed in the original indictment, then the state would have had to re-notice the defendant of the state's intent to seek the death penalty. *See Matos v. State*, 961 So. 2d 1077, 1077 (Fla. 4th DCA 2007) (holding that the defendant's motion to dismiss for charges filed after the statute of limitations should have been granted where the state chose to nolle prosse the original charges, which "effectively ends the proceeding and any subsequent action is a nullity," instead of filing an amended information).

In precluding the state from seeking the death penalty, the trial court relied on a quote by the Florida Supreme Court that "[i]t is well settled that the filing of an amended information *purporting to be a complete restatement of the charges* supersedes and vitiates an earlier information." *State v. Anderson*, 537 So. 2d 1373, 1374 (Fla. 1989) (emphasis added). However, the superseding indictment in this case is clearly not a complete restatement of the charges, as it sought only to add a sentencing enhancer. Thus, the trial court erred by concluding that the superseding indictment vitiated the original indictment where the state added only a statutory sentencing enhancer. *See Howard v. State*, 27 So. 3d 104, 106 (Fla. 4th DCA 2009) (holding that an information amended for the sole purpose of adding a defendant's alias did not vitiate the original information).

We see in other situations where a prosecution continues from the original indictment or information through an amended information or superseding indictment. For example, speedy trial waivers from an original indictment survive an amended information or superseding indictment. *Wallace v. State*, 189 So. 3d 1022, 1027 (Fla. 3d DCA 2016).

5

The original indictment or information is also relevant to the consideration of the statute of limitations. *See Clifton*, 905 So. 2d at 177 n.2 ("However, when the state files an amended information that does not substantially alter the original charge or otherwise prejudice the defendant and it is sufficiently linked to the original information, the courts have held that the amended information relates back to the filing of the original information without an interruption of the prosecution of the case."); *Bongiorno v. State*, 523 So. 2d 644, 645 (Fla. 2d DCA 1988) (holding that prosecution under an amended information filed after the statute of limitations is not barred where the amended information is "merely a continuation of the original information"). The obtaining of evidence through discovery also does not terminate following an amended information or superseding indictment—discovery obligations continue throughout prosecution. *See Quattrocchi v. State*, 17 So. 3d 329, 331 (Fla. 3d DCA 2009) ("The defense . . . requested a mistrial to engage in *further* discovery" after the state amended the information during trial.) (emphasis added).

The trial court relied in part on *Chantiloupe* to preclude the state from seeking the death penalty. However, *Chantiloupe* is relevant only to determine the applicable remedy when the state does not provide any notice of its intent to seek the death penalty. In *Chantiloupe*, this court affirmed the trial court's decision to preclude the state from seeking the death penalty where the defendant received *no* notice from the state of its intent to seek the death penalty. 248 So. 3d at 1193, 1200. However, unlike this case, the state in *Chantiloupe* never complied at all with section 782.014(1)(b) inasmuch as it did not file the notice within 45 days of arraignment. Thus, *Chantiloupe* is limited to circumstances where the defendant was not noticed at all within the 45-day window of the state seeking the death penalty. That differs from the circumstances in this case. Here, unlike *Chantiloupe*, the defendant did receive timely notification of the state seeking the death penalty.

Although we find the statute is clear and unambiguous, the canons of construction offer further support to our granting the writ.[2] First and

[2] The Florida Supreme Court in *Conage v. United States*, 346 So. 3d 594 (Fla. 2022), held that statutory canons of interpretation may be consulted alongside the plain language, even when the plain language is clear and unambiguous. *Id.* at 598 ("[T]he traditional canons of statutory interpretation can aid the interpretive process from beginning to end . . . . It would be a mistake to think that our law of statutory interpretation requires interpreters to make a threshold determination of whether a term has a 'plain' or 'clear' meaning in isolation, without considering the statutory context and without the aid of whatever canons might shed light on the interpretive issues in dispute.").

foremost, the omitted-case canon of construction is persuasive. Our court has repeatedly relied on this canon. *See Nunes v. Herschman,* 310 So. 3d 79, 84 (Fla. 4th DCA 2021); *State v. Wooten,* 260 So. 3d 1060 (Fla. 4th DCA 2018). The omitted-case canon stands for "the principle that what a text does not provide is unprovided." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 96 (2012). This canon is another way of stating the longstanding principle that courts are not at liberty to add words to a statute that the legislature has not expressly provided. Neither the relevant statute nor rule in this case required the state to re-notice the defendant of its intent to seek the death penalty. According to the statute, the state was required to notify the defendant "within 45 days after arraignment," which the state clearly did. Nowhere in the statute is there a requirement that the state re-notice the defendant after each superseding indictment. To require a re-notice for each superseding indictment, especially where the superseding indictment had no bearing on the state's seeking of the death penalty, would result in the addition of words to the statute. We are not at liberty to add what the legislature did not provide.

We also look to the presumption against ineffectiveness. "The presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered." Scalia & Garner, *Reading Law* at 63. "This canon follows inevitably from the facts that (1) interpretation always depends on context, (2) context always includes evident purpose, and (3) evident purpose always includes effectiveness." *Id.* The "evident purpose" of the statute was to provide the defendant with notice that the state was seeking the death penalty. The "evident purpose" of section 782.04(1)(b), as well as rule 3.181, was fulfilled when the state filed its notice to seek the death penalty after the filing of the original indictment.

The "evident purpose" and the "effectiveness" of the statute would be hindered by requiring the re-notice of the state seeking the death penalty after every subsequent indictment, even where the changes to the superseding indictment had no bearing on the seeking of the death penalty, like in the present case, where the superseding indictment merely added a gang enhancement. The rationale for a notice requirement in criminal cases is to apprise the defendant of the charges and potential punishments against him, such as the death penalty, and afford the defendant an opportunity to adequately prepare a defense. *Glasserman v. State,* 590 So. 2d 17, 17 (Fla. 4th DCA 1991).

Clearly, in the present case, the defendant was noticed and apprised of the state seeking the death penalty in 2019. The defendant has had nearly three years to start the preparation of his defense to the state seeking the

death penalty, between the filing of the original notice and the superseding indictment. The record contains no evidence that the defendant was prejudiced in any way by the state not filing a re-notice of its intent to seek the death penalty after the addition of the gang enhancement.

Finally, we can look to the "title-and-headings" canon for guidance. The "title-and-headings" canon means that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text." *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991); Scalia & Garner, *Reading Law* at 221. The title of rule 3.181 is "Notice to Seek Death Penalty." Thus, the title gives us clear direction on the purpose of the rule. In this case, the superseding indictment added a gang enhancement, which, once again, had no effect on the death penalty that the state seeks. The gang enhancement would not affect the death penalty, nor the state's notice under rule 3.181. The rule's title confirms that the notice to seek the death penalty would apply to those circumstances only. The rule's title corroborates the state's interpretation that the defendant need not be re-noticed following a superseding indictment that had no bearing on the seeking of the death penalty, like in the present case.

In summary, we find the trial court exceeded its authority by precluding the state from seeking the death penalty. The state complied with the statute, and rule, requiring notice within 45 days of arraignment. We grant the writ of prohibition, remand to the trial court, and direct the trial court to allow the state to proceed in seeking the death penalty.

In addition, we certify the following to the supreme court as a question of great public importance:

> WHETHER THE FILING OF A SUPERSEDING INDICTMENT, WHICH ADDS ONLY A STATUTORY SENTENCING ENHANCEMENT, REQUIRES RE-NOTICE OF AN ALREADY TIMELY FILED NOTICE OF INTENT TO SEEK THE DEATH PENALTY?

*Petition granted and remanded; question certified.*

GROSS and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***