426 So.2d 1 (1982)
The MIAMI HERALD PUBLISHING CO., etc., et al., Petitioners,
v.
Royce R. LEWIS, et al., Respondents.
No. 59392.
Supreme Court of Florida.
September 2, 1982.
Rehearing Denied March 2, 1983.
*2 Parker D. Thomson, Sanford L. Bohrer and Richard J. Ovelmen of Paul & Thomson, Miami, James D. Spaniolo, Gen. Counsel, The Miami Herald, Miami, and Florence Beth Snyder, Gen. Counsel, Palm Beach Newspapers, Inc., West Palm Beach, for petitioners.
Jim Smith, Atty. Gen., and Lucy H. Harris, Asst. Atty. Gen., Tallahassee, for respondents.
Barry Scott Richard of Roberts, Miller, Baggett, LaFace, Richard & Wiser, Tallahassee, for The Florida Press Ass'n and The Florida Soc. of Newspaper Editors, amicus curiae.
ADKINS, Justice.
The matter before us has been certified as of great public importance by the Fourth District Court of Appeal in the case of Miami Herald Publishing Co. v. Lewis, 383 So.2d 236 (Fla. 4th DCA 1980). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The questions certified are:
(1) HOW CAN THE TRIAL COURTS MEANINGFULLY INCLUDE THE MEDIA AT EVIDENTIARY HEARINGS CONVENED TO DECIDE WHETHER THE MEDIA SHOULD BE PRECLUDED FROM ACCESS TO THAT VERY SAME EVIDENCE?
(2) SHOULD THIS COURT ABANDON THE THREE-PRONGED STANDARD WHICH WE ADOPTED IN MIAMI HERALD v. STATE IN VIEW OF THE HOLDING IN GANNETT?
The district court held that in light of pretrial publicity, the trial judge in the murder trial of Brooks John Bellay properly ordered closure of a hearing on a motion to suppress Bellay's confessions, but that the judge improperly sealed records pertaining to the suppression hearing.
The facts upon which the trial judge based his order closing the hearing and sealing the record are as follows. Fourteen-year-old Brooks John Bellay became the focal point of an investigation into the murder of four-year-old Angel Halstead. Angel's disappearance, the search for and discovery of her body, and the investigation into her murder were all extensively covered by local news media. Bellay was interviewed and quoted widely by the print and broadcast media, perhaps because of his active role in the search and his seemingly intimate knowledge of the crime. Bellay was questioned by police shortly after Angel's body was found. He gave them four inculpatory statements. The details of the search, the killing, and Bellay's confession were widely reported by the press, as were certain of Bellay's pretrial hearings. Dozens of articles and several videotapes of television broadcasts were presented by Bellay's attorney to the trial judge. The tapes and articles made numerous and repeated references to Bellay and included interviews with him and quotations from him. The public had been made aware, by the news media, that Bellay had confessed to the crime. The public was virtually inundated with information detailing the crime.
*3 Petitioner's position in the matter is that this Court should formally adopt the so-called "three-pronged test" for closure of judicial proceedings, and that press participation in closure motions poses no threat to the fair administration of justice. See Miami Herald Publishing Co. v. State, 363 So.2d 603 (Fla. 4th DCA 1978). The three-pronged test would impose the following requirements on an order to close a pretrial hearing.
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No less restrictive alternative measures than closure are available; and
3. Closure will in fact achieve the court's purpose.
Respondent, on the other hand, argues that we should abandon the three-pronged standard in view of the holding of the United States Supreme Court in Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Respondent further argues that there are certain situations that warrant exclusion of the press from pretrial suppression hearings. Respondent finally argues, as an alternative to the three-pronged test, that the following requirements be imposed on closure of a pretrial hearing.
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than change of venue, which would protect a defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
We adopt the three-pronged test proposed by respondent.
The precise question raised in this case is whether a trial court in a criminal proceeding has the authority to exclude the public and press from a pretrial suppression hearing in order to assure the defendant a "speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI.
In considering this question, we must delicately balance the competing yet fundamental rights of an accused to a fair trial by an impartial jury, and of the free press guaranteed by the first amendment. The inherent conflict between these two rights is a difficult one to resolve, and in so doing, we seek a solution that gives maximum importance to both interests.
An additional factor that must be considered is the inherent power and interest of the court in guaranteeing to the litigants the fundamental right to a fair trial. The question then, is three dimensional, dealing with the power and authority of the court, the rights of the defendant, and the rights and interests of the public and the press.
Generally speaking, an accused who seeks to exclude the news media from a judicial proceeding does so based on the sixth amendment right to a "speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const.amend. VI. Although this has been recognized to be a fundamental right of one accused of a crime, Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); United States v. Columbia Broadcasting System Inc., 497 F.2d 102 (5th Cir.1974); it is also clear that freedom of the press is a basic right and must be weighed in the balance when fair trial rights are being considered.
Courts have the inherent power "to preserve order and decorum in the court room, to protect the rights of the parties and witnesses and generally to further the administration of justice." State ex rel. Gore Newspapers Co. v. Tyson, 313 So.2d 777, 782 (Fla. 4th DCA 1975) (overruled English v. McCrary, 348 So.2d 293 (Fla. 1977), citing People v. Hinton, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), cert. denied, 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973). "This power exists apart from any statute or specific constitutional provision and springs from the creation *4 of the very court itself; it is essential to the existence and meaningful functioning of the judicial tribunal." Id. at 781.
We held in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1977), that the public should generally have unrestricted access to all judicial proceedings, id. at 908, and we recognize that the news media, even though not a party to litigation, has standing to question the validity of an order restricting publicity because its ability to gather news is directly impaired or curtailed. Id. "Nevertheless, a trial court has the inherent power to control the conduct of the proceedings before it, and it is the trial court's responsibility to protect a defendant in a criminal prosecution from inherently prejudicial influences which threaten [the] fairness of his trial and the abrogation of his constitutional rights." Id. at 909, citing United States v. Dickinson, 465 F.2d 496 (5th Cir.1972) (footnotes omitted).
Two recent United States Supreme Court decisions pertinent to the issues are Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) and Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In Gannett, defense attorneys for two men charged with murder moved to close a pretrial suppression hearing to the press and public. The defendants' lawyers argued that adverse publicity had jeopardized their clients' fair trial rights. The motion was not opposed by the prosecutor and was not objected to by the representative of the petitioner newspaper. The trial judge ultimately granted defendants' motion, concluding that the interests of the press and public were outweighed by defendants' right to a fair trial. The trial judge found that an open suppression hearing would pose a "reasonable probability of prejudice to these defendants... ." 443 U.S. at 376, 99 S.Ct. at 2903. The Supreme Court of the State of New York vacated the trial court's orders holding that the exclusionary orders transgressed the public's vital interest in open judicial proceedings and constituted an unlawful prior restraint in violation of the first and fourteenth amendments. Gannett Co. v. DePasquale, 55 App.Div.2d 107, 389 N.Y.S.2d 719 (1976).
On appeal, the New York Court of Appeals upheld the exclusion based on the danger to the defendants' fair trial rights, which rights overcame the presumption of openness surrounding criminal trials. Gannett Co., Inc. v. DePasquale, 43 N.Y.2d 370, 401 N.Y.S.2d 756, 372 N.E.2d 544 (1977). The United States Supreme Court in Gannett considered two aspects of the access issue. As to the sixth amendment, the Court held that "members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials." 443 U.S. at 390, 99 S.Ct. at 2911.
The Court, while declining to rule on the first amendment claims, concluded that the actions of the trial judge were consistent with any right of access that may have been available under the first and fourteenth amendments.
Several factors lead to the conclusion that the actions of the trial judge here were consistent with any right of access the petitioner may have had under the First and Fourteenth Amendments. First, none of the spectators present in the courtroom, including the reporter employed by the petitioner, objected when the defendants made the closure motion. Despite this failure to make a contemporaneous objection, counsel for the petitioner was given an opportunity to be heard at a proceeding where he was allowed to voice the petitioner's objections to closure of the pretrial hearing. At this proceeding, which took place after the filing of briefs, the trial court balanced the "constitutional rights of the press and the public" against the "defendants' right to a fair trial." The trial judge concluded after making this appraisal that the press and the public could be excluded from the suppression hearing and could be denied immediate access to a transcript, because an open proceeding would pose a "reasonable probability of prejudice to these defendants." Thus, the trial court found *5 that the representatives of the press did have a right of access of constitutional dimension, but held, under the circumstances of this case, that this right was outweighed by the defendants' right to a fair trial. In short, the closure decision was based "on an assessment of the competing societal interests involved... . rather than on any determination that First Amendment freedoms were not implicated." Saxbe [v. Washington Post. Co.] supra, [417 U.S. 843] at 860, 94 S.Ct. 2811, [at 2819] 41 L.Ed.2d 514 (Powell, J., dissenting).
Furthermore, any denial of access in this case was not absolute but only temporary. Once the danger of prejudice had dissipated, a transcript of the suppression hearing was made available. The press and the public then had a full opportunity to scrutinize the suppression hearing. Unlike the case of an absolute ban on access, therefore, the press here had the opportunity to inform the public of the details of the pretrial hearing accurately and completely. Under these circumstances, any First and Fourteenth Amendment right of the petitioner to attend a criminal trial was not violated.
443 U.S. at 392-93, 99 S.Ct. at 2911-12 (footnote omitted).
In the conclusion of the Court's opinion it is made clear that the constitution affords no affirmative right of access to the pretrial hearing at issue in Gannett.
Richmond Newspapers involved the closure of an entire trial. This was the defendant's fourth trial on the same murder charges. Defense counsel's motion to close the trial to the public was not objected to and was granted by the trial judge. The trial judge apparently relied on a Virginia statute which granted discretion to courts in criminal cases to exclude persons from the trial whose presence would impair the conduct of a fair trial. The Virginia Supreme Court found no reversible error. The United States Supreme Court reversed, holding that the court order violated the right of access of the public and the press to criminal trials granted by the first and fourteenth amendments. Gannett was distinguished in Richmond Newspapers, as follows:
In Gannett ..., the Court was not required to decide whether a right of access to trials, as distinguished from hearings on pre trial motions, was constitutionally guaranteed. The Court held that the Sixth Amendment's guarantee to the accused of a public trial gave neither the public nor the press an enforceable right of access to a pre trial suppression hearing. One concurring opinion specifically emphasized that "a hearing on a motion before trial to suppress evidence is not a trial .. ." 443 U.S., at 394 [99 S.Ct. at 2912], ... (Burger, C.J., concurring). Moreover, the Court did not decide whether the First and Fourteenth Amendments guarantee a right of the public to attend trials, id., at 392, and n. 24 [99 S.Ct. at 2911, and n. 24] nor did the dissenting opinion reach this issue. Id. at 447 [99 S.Ct. at 2940] (opinion of Blackmun, J.).
448 U.S. at 564, 100 S.Ct. at 2821 (emphasis in the original.)
The specific holding in Richmond Newspapers is that the right to attend criminal trials is implicit in the guarantees of the first amendment. This holding is somewhat qualified, however, by footnote 18, which provides, inter alia:
We have no occasion here to define the circumstances in which all or parts of a criminal trial may be closed to the public ... . but our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute. Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic ... so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial.
448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18.
The Richmond Newspapers decision is distinguishable from Gannett, and from the facts of the instant case, so it does not set *6 forth mandatory precedent with respect to the question before us.
There is no first amendment protection of the public's and press' rights to attend pretrial suppression hearings as distinguished from the right to attend a criminal trial. Indeed, in his concurring opinion in Richmond Newspapers, Justice Stewart suggested that there has not yet been a definitive statement by the Court concerning the application of the first and fourteenth amendments to pretrial suppression hearings. 448 U.S. at 598-99, 100 S.Ct. at 2839. The Court in Gannett spoke to this issue generally, and in dicta, however, it was explicitly stated that a decision would not be made based on the first and fourteenth amendments. This, we feel, leaves us considerable leeway in determining how we will resolve this problem in the state of Florida.
This Court has been supportive of open government, as witnessed by our decisions in Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969), and City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971). We have been supportive of open government with respect to the judicial branch as well. In In re Petition of Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 (Fla. 1979), we permitted the electronic media to have access to courtrooms. "The prime motivating consideration prompting our conclusion is this state's commitment to open government." 370 So.2d at 780 (footnote omitted). And in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 908-09 (Fla. 1977), we held:
A trial is a public event, and there is no special perquisite of the judiciary which enables it to suppress, edit or censor events which transpire in proceedings before it, and those who see and hear what transpired may report it with impunity, subject to constitutional restraints mentioned herein.
(Footnote omitted).
So a concern for open government is not new to us, nor is the application of a policy of open government to the judicial branch. See also King v. State, 390 So.2d 315 (Fla. 1980), aff'd in part and rev'd in part, State v. Hegstrom, 401 So.2d 1343 (Fla.), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); Harnum v. State, 384 So.2d 1320 (Fla. 2d DCA 1980); Green v. State, 377 So.2d 193 (Fla. 3d DCA 1979); Smith v. State, 376 So.2d 455 (Fla. 1st DCA 1979), cert. denied, 402 So.2d 613 (Fla. 1981), (all following the Florida Supreme Court's decision in Post-Newsweek).
In our opinion, Gannett does not require that we abandon the three-pronged test. However, it should be modified in the following particulars, as suggested by respondent.
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than change of venue, which would protect a defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
Every defendant has the right "to have a ... trial ... in the county where the crime was committed." Art. I, § 16, Fla. Const. (1968). There is no first amendment protection of the press' rights to attend pretrial hearings. Gannett. We should not elevate this non-constitutional privilege of the press above the constitutional right of the defendant to be tried in the county where the crime was committed. A change of venue should not be considered as an alternative to closure.
Public access to the courts is an important part of the criminal justice system, as it promotes free discussion of governmental affairs by imparting a more complete understanding to the public of the judicial system. Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Such access gives the assurance that the proceedings were conducted fairly to all concerned. Richmond Newspapers. Aside from any beneficial consequences which flow from having open courts, the people have a right *7 to know what occurs in the courts. The Supreme Court of the United States has noted repeatedly that a trial is a public event. What transpires in the courtroom is public property. Craig v. Harney, 331 U.S. 367, 373-74, 67 S.Ct. 1249, 1253-54, 91 L.Ed. 1546 (1947). Public access also serves as a check on corrupt practices by exposing the judicial process to public scrutiny, Nebraska Press Ass'n. v. Stuart, 427 U.S. 539, 559-560, 96 S.Ct. 2791, 2802-2803, 49 L.Ed.2d 683 (1976), and protects the rights of the accused to a fair trial. Richmond Newspapers, 448 U.S. at 564, 100 S.Ct. at 2821 et seq. Finally, because participating lawyers, witnesses and judges know their conduct will be subject to public scrutiny, it is fair to conclude that they will be more conscientious in the performance of their roles.
The above three-pronged test provides the best balance between the need for open government and public access, through the media, to the judicial process, and the paramount right of a defendant in a criminal proceeding to a fair trial before an impartial jury. The courts of other states have recently faced the issue of press access to pretrial suppression hearings or trials, and their decisions support endorsement of three-part tests similar to the one here. Lexington Herald Leader Co. v. Tackett, 601 S.W.2d 905 (Ky. 1980); Detroit Free Press, Inc. v. Recorder's Court Judge, 409 Mich. 364, 294 N.W.2d 827 (1980); Commonwealth v. Hayes, 489 Pa. 419, 414 A.2d 318, cert. denied, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980); Herald Ass'n v. Ellison, 138 Vt. 529, 419 A.2d 323, (1980); Federated Publications, Inc. v. Kurtz, 94 Wash.2d 51, 615 P.2d 440 (1980); State ex rel. Herald Mail Co. v. Hamilton, 267 S.E.2d 544 (W. Va. 1980); Williams v. Stafford, 589 P.2d 322 (Wyo. 1979).
The other question certified to us by the District Court reads:
How can the trial courts meaningfully include the media at evidentiary hearings convened to decide whether the media should be precluded from access to that very same evidence?
In State ex rel. Pensacola News-Journal, Inc. v. Fleet, 388 So.2d 1106, 1107 (Fla. 1st DCA 1980), the court correctly noted "that only the circumstances surrounding the giving of the statement [to be suppressed] are at issue [in a suppression hearing], not necessarily the contents of the alleged confession." Thus, in a typical case, a carefully controlled suppression hearing can itself be conducted in open court without creating any prejudice whatever. The issues concern not so much the contents of a confession or of a wiretap, or the nature of the evidence seized, but the circumstances under which the prosecution obtained this material.
The news media has been the public surrogate on the issue of courtroom closure. Therefore, the news media must be given an opportunity to be heard on the question of closure prior to the court's decision. Implicit in the right of the members of the news media to be present and to be heard is the right to be notified that a motion for closure is under consideration. This procedure will avoid unnecessary appeals that will otherwise eventually occur.
At the hearing, those who seek closure should first provide an adequate basis to support a finding that closure is necessary to prevent a serious and imminent threat to the administration of justice. The primary purpose of closure is to protect the defendant's right to a fair trial, one free of widespread hostile publicity, so as to insure him an unbiased jury. The factors to be considered include the extent of prior hostile publicity, the probability that the issues involved at the pretrial hearing will further aggravate the adverse publicity, and whether traditional judicial techniques to insulate the jury from the consequences of such publicity will ameliorate the problem. Absent a showing of widespread adverse publicity, the trial court should not grant a motion to close the hearing. The trial judge must determine if there is a serious and imminent threat that publication will preclude the fair administration of justice. In determining this question, an evidentiary hearing should be held and *8 findings of fact should be recorded by the judge in his order granting or refusing closure.
Second, those seeking closure should be required to show that no less restrictive alternative measures than closure are available for this purpose. Where a less restrictive alternative is available for assuring the fair trial guarantee and the use of the alternative does not unduly burden the expeditious disposition of the cause, the alternative procedure should be opted for in preference to closure. The following alternatives should be considered: continuance, severance, change of venire, voir dire, peremptory challenges, sequestration, and admonition of the jury. One or more of these alternatives may adequately protect the accused's interest and relieve the court of any need to close the proceeding in advance.
Third, those seeking closure should demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm. Where prejudicial information already has been made public, there would be little justification for closing a pretrial hearing in order to prevent only the disclosure of details which had already been publicized. Of course, the probability that the issues involved at the pretrial hearing will further aggravate the adverse publicity is a factor to be considered in determining whether or not closure is necessary to prevent a serious and imminent threat to the administration of justice.
The trial court should begin its consideration with the assumption that a pretrial hearing be conducted in open court unless those seeking closure carry their burden to demonstrate a strict and inescapable necessity for closure. The issues considered at such hearings are of great moment beyond their importance to the outcome of the prosecution. A motion to suppress involves allegations of misconduct by police and prosecution that raise constitutional issues. Such allegations, although they may prove to be unfounded, are of importance to the public as well as to the defendants. The searches and interrogations that such hearings evaluate do not take place in public. The suppression hearing is the only opportunity that the public has to learn about police and prosecutorial conduct. It is important that a decision of the trial judge on a motion to suppress be made on the basis of evidence and argument offered in open court, so that all who care to see or read about the case may evaluate for themselves the propriety of the exclusion.
The trial court, upon ruling that a closure motion is warranted, must make findings of fact and must extend its order no further than the circumstances warrant. It is impossible to adopt prophylactic rules to guide the trial judge in applying the three-pronged test. It is within the inherent power of the court to protect the rights of the parties and witnesses and generally to further the administration of justice. The judge's goal is to balance the countervailing interest, restricting each as little as possible while still serving the ends of justice.
As a summary of guidelines for the trial judge to use in applying the "three-pronged standard," we hold: (1) Notice must be given to at least one representative of the local news media when a motion for closure is filed and when it is heard by the court. See State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 912 (Fla. 1977) (Sundberg, J., concurring). (2) Those seeking closure have the burden of producing evidence and proving by a greater weight of the evidence that closure is necessary, the presumption being that a pretrial hearing should be an open one. (3) The news media have no first amendment right to attend the pretrial hearing as long as when closure is ordered, the transcript of the hearing is made available to the news media at a specified future time, when the danger of prejudice will be dissipated (for example, after the trial jury is sequestered). (4) Where possible, the court should exclude the contents of a confession or of a wiretap, or the nature of the evidence seized, when the issues involved relate to the manner in which the prosecution obtained this material. (5) The trial *9 judge shall make findings of fact and conclusions of law so that the reviewing court will have the benefit of his reasoning in granting or denying closure.
The decision of the District Court of Appeal is quashed and the cause is remanded with instructions to affirm the order of the trial court.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.