467 So.2d 1026 (1985)
MIAMI HERALD PUBLISHING CO., A DIVISION OF KNIGHT-RIDDER NEWSPAPERS, INC., Post-Newsweek Stations, Florida, Inc., a Florida Corporation Which Operates WPLG-TV, Channel 10, WBC Broadcasting Corp., a Florida Corporation Which Operates WTVJ, Channel 4, and Sunbeam Television Corp., a Florida Corporation Which Operates WSVN, Channel 7, Petitioners,
v.
The Honorable Ellen MORPHONIOS, As Judge of the Circuit Court of the 11TH Judicial Circuit, Dade County, Florida, and Hector Arencibia, Respondents.
No. 85-103.
District Court of Appeal of Florida, Third District.
February 5, 1985.
*1027 Thomson, Zeder, Bohrer, Werth, Adorno & Razook and Jerold I. Budney, Richard J. Ovelmen and Samuel A. Terilli, Sharpstein & Sharpstein and Richard A. Sharpstein, Laura Besvinick and Janice Burton Sharpstein, Steel Hector & Davis and Thomas R. Julin and Joan H. Lowenstein, Miami, for petitioners.
Richard Schiffrin, Akhtar Hussain, Miami, for respondents.
Before BARKDULL, HENDRY and BASKIN, JJ.
HENDRY, Judge.
This cause came before the court upon the Miami Herald Publishing Company's petition[1] for emergency review of a protective *1028 order entered by the respondent judge which prevented petitioners from publishing any information regarding the content of the videotaped trial testimony of the alleged minor victim prior to the showing of the videotape at the actual trial of respondent Arencibia. We have jurisdiction pursuant to Rule 9.100(d), Florida Rules of Appellate Procedure. For reasons more fully developed below, we reverse the order under review.[2]
The facts of this case may be stated very briefly. On December 18, 1984, respondent Judge Ellen Morphonios entered an order granting the state's request that the trial testimony of the minor child alleged to be the victim of sexual battery be videotaped for presentation at trial under the authority of former statute, section 918.17, Florida Statutes.[3] Subsequently, on January 10, 1986, the respondent entered an order which granted the media access to the videotaping session, then scheduled to be held on January 12, 1985, but barred the media from printing or in any other way disseminating the contents of the trial testimony prior to the actual use of the videotape at trial, now scheduled to begin on February 25, 1985. The representatives of the various news media took this appeal, challenging the action of the respondent judge as a prior restraint on their ability to report the news (i.e., the trial testimony) as it occurs.

I.
At the outset we note that under the former statute, section 918.17, Florida Statutes (1983), this problem would not have arisen. That statute provided for the videotaping of the trial testimony, for use at trial, of a child 11 years of age or younger in a sexual battery or child abuse case, but only after the trial had commenced. (e.s.). Thus, under this statute, one did not have to be concerned about the prejudice resulting from having the prosecution's case-in-chief widely reported prior to the jury being empanelled. This statute was amended and expanded, however, by chapter 84-36, Laws of Florida, to allow the videotaping of trial testimony of victims or witnesses under age 16 upon proper motion, upon a finding that there is a substantial likelihood that the victim or witness would suffer severe emotional or mental distress if required to testify in open court. It is because the new statute, now codified at section 90.90, Florida Statutes (Supp. 1984), omitted the requirement that the videotaping be done only after commencement of the actual trial that the interests protected by the first and sixth amendments now clash. It is because of this change in the statute that we must now confront the inherent tensions between the right of the media to report on crimes of great public concern and the right of the accused to a fair trial by an impartial jury.

II.
Initially, we recognize that any form of prior restraint of expression comes to this court bearing a heavy presumption against its constitutional validity. Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Therefore, the party who seeks to have such a restraint upheld carries a heavy burden of showing justification for the imposition of such a restraint. State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976).
Nevertheless, a trial court has the innate power to control the conduct of the proceedings before it, and it is the trial court's responsibility to protect a defendant in a criminal prosecution from inherently prejudicial influences which threaten the fairness of his trial and the abrogation of his constitutional rights. Miami Herald *1029 Publishing Co. v. Lewis, 426 So.2d 1, 4 (Fla. 1982), citing Miami Herald v. McIntosh, 340 So.2d at 909. This court must delicately balance the competing yet fundamental rights of an accused to a fair trial by an impartial jury and of the free press guaranteed by the first amendment. The fundamental conflict between these two rights is a difficult one to resolve. Moreover, in effecting this delicate balancing of rights we must be cognizant of the expressed statutory concern for the emotional or mental well-being of a minor victim, which concern has been recognized as a compelling state interest. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).
This case is one of first impression because the amended statutory procedure now allows trial testimony to be given in a pretrial proceeding. Therefore, none of the earlier first amendment versus sixth amendment cases are precisely on point. Cases prior to this one deal with either barring the press from a trial altogether or restraining the press from publishing accounts of pretrial evidentiary proceedings. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), which involved the closing of a criminal trial to press and public, held that "the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials ... important aspects of freedom of speech and of the press could be eviscerated." Id. at 100 S.Ct. 2829. However, there is no first amendment protection of the rights of the public and the press to attend pretrial hearings, as distinguished from the right to attend a criminal trial. Miami Herald v. Lewis, 426 So.2d at 6.
The United States Supreme Court has long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity because of the fact that when such information is publicized, particularly during a pretrial proceeding, it may never be altogether kept from potential jurors. "Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun." Id. 99 S.Ct. at 2905.

III.
Those who seek closure of a pretrial proceeding (or a restraint operating as a closure), must first provide an adequate basis to support a finding that closure is necessary to prevent a serious and imminent threat to the administration of justice. Second, those seeking closure are required to show that no less restrictive alternative measures than closure are available for this purpose.[4] Third, those seeking closure must demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm. Nebraska Press Ass'n v. Stuart, 96 S.Ct. at 2804; Miami Herald v. Lewis, 426 So.2d at 6. The trial court, upon ruling that a closure is warranted, must make findings of fact and must extend its order no further than the circumstances require. Miami Herald v. Lewis, 426 So.2d at 8.
The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and the closure or restraint order must be narrowly tailored to serve that interest. A trial court can determine, on a case by case basis, whether these legitimate concerns necessitate closure. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 *1030 (1984); Capital Cities Media, Inc. v. Toole, 463 U.S. 1303, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983); Globe Newspaper v. Superior Court, 102 S.Ct. at 2621.
In the case at hand, as in the above cited cases, the requisite findings of fact to justify the restraint were lacking in the order under review. The sole reason offered as a basis for the restraint order was the belief of the trial court that there is a qualitative difference between actual trial testimony and other pretrial and discovery proceedings. While that is a relevant consideration, it is not sufficient, by itself, to justify a prior restraint order. Trial courts must set out, in detail, findings that substantial prejudice to the defendant will result from the pretrial publicity, that no less restrictive alternatives (e.g., a thorough and sensitive voir dire or the careful exercise of preemptory challenges) are available and that restraint is the only effective method of protecting legitimate and compelling interests. While the trial court herein was obviously persuaded that the rights and interests of both the defendant and the minor victim were at risk, there is nothing before us which substantiates the perceived harm. Thus, without any articulated findings and conclusions to support the trial court's action, we are compelled to reverse.
Reversed.
NOTES
[1] Petitioner was later joined by Post-Newsweek Stations, Florida, Inc., WBC Broadcasting Corp., and Sunbeam Television Corp., which operate television channels 10, 4 and 7, respectively.
[2] An order reversing the trial court was issued orally following the emergency hearing on January 11, 1985.
[3] As will be discussed infra, section 918.17 was amended, effective July 1, 1984, and recodified at section 90.90, Florida Statutes (Supp. 1984).
[4] In Miami Herald v. Lewis, 426 So.2d at 6, the Florida Supreme Court makes clear that a change in venue should not be considered as an alternative to closure. (e.s.).