DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Petitioner,

v.

**DACOBY RESHARD WOOTEN** and
**THE PALM BEACH POST,**
Respondents.

No. 4D18-2636

[November 28, 2018]

Petition for writ of certiorari to the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cheryl A. Caracuzzo, Judge; L.T. Case No. 50-2015-CF-011635-AXXX-MB.

Pamela Jo Bondi, Attorney General, Tallahassee, and Marc B. Hernandez, Assistant Attorney General, West Palm Beach, for petitioner.

Carey Haughwout, Public Defender, and Christine Geraghty, Assistant Public Defender, West Palm Beach, for respondent Dacoby Reshard Wooten.

L. Martin Reeder Jr. of Atherton McAuliffe & Reeder, PA, West Palm Beach, for respondent The Palm Beach Post.

LEVINE, J.

The state asks us to prevent the disclosure of information that it had redacted from search warrants and warrant applications related to this pending criminal prosecution. We deny the petition and require an unredacted disclosure of the search warrants and applications to the defendant. Due process mandates it.

We also deny the petition as to the other portion of the order and require that there be an unredacted disclosure to the public and third parties. As to the public disclosure, first, the state did not preserve any argument regarding section 119.071, Florida Statutes (2018); second, this case does not involve a public records request under section 119.071; third, the trial court did not abuse its discretion in finding that the state did not meet its

burden to justify closure; and finally, there is a common law "right to access" judicial records where the state has failed to demonstrate a compelling governmental interest in non-disclosure.

Because the requirements for certiorari review have not been met, we deny the petition and require the unredacted disclosure of the search warrants and the accompanying applications to the defendant and the public.

The defendant allegedly committed a murder, shot at a witness to the murder, and then fled the scene. Law enforcement obtained search warrants authorizing electronic tracking of the defendant's cell phone and the cell phone of a friend with whom the defendant allegedly was hiding. The order authorizing the search warrants stated that the warrants and supporting documents would be "sealed until further Order of this Court." Law enforcement apprehended the defendant at the friend's apartment. The search warrants, applications, affidavits, return, and inventory were not filed with the clerk of court as required by chapter 933, Florida Statutes.[1]

The defendant sought discovery regarding cell phone tracking, including requests for all warrants relating to his cellphone. The state eventually filed with the court unredacted versions of the warrant documents under seal. The state sought to provide only redacted versions of the search warrants and applications to the defense and to prevent dissemination to third parties. The redacted information related to the tracking of cell phones.

The defendant moved to unseal the documents. The Palm Beach Post filed a motion to intervene seeking to vacate the order limiting disclosure of the redacted documents and requesting public access to the unredacted documents.

The trial court held a hearing on the motion to unseal and the motion to intervene. The trial court explained that during a prior hearing it treated the state's request to limit the unsealing as a motion to determine confidentiality of court records under Florida Rule of Judicial Administration 2.420. The trial court recognized that, under rule 2.420, warrants are court records. Rule 2.420(c)(6) exempts warrants and supporting documents from disclosure only until execution of the warrant or until it is determined that execution is not possible.

---

[1] The record does not explain why the executed search warrants and related documents were not immediately filed with the court as required by law.

2

The state argued that "investigative techniques" should be deemed confidential to "protect a compelling governmental interest," referring to rule 2.420(c)(9)(A)(iii). The trial court stated that it had reviewed the unredacted materials in camera and concluded that the state's reasons for restricting disclosure did not amount to a compelling governmental interest.

The trial court granted the motion to unseal and ordered the unredacted records unsealed and made open to the public by a certain date. The trial court granted the Post's motion to intervene and denied the Post's motion to unseal as moot in light of the court granting the defendant's motion. The state petitioned this court for certiorari review. This court stayed the release of the unredacted documents pending our certiorari review.

The state argues that the trial court departed from the essential requirements of law by ordering the release of privileged surveillance techniques that are not subject to public disclosure under section 119.071(2)(d), Florida Statutes. The state contends that disclosure of "privileged surveillance techniques" will irreparably harm the state because it "will inform fugitives how to avoid lawful surveillance and to evade capture." The state alternatively argues that, even if the defendant is entitled to the unredacted documents, this court should find the unredacted documents are exempt from public disclosure.

To invoke certiorari jurisdiction, the state must show that the order complained of constitutes a departure from the essential requirements of law and causes the state material harm that cannot adequately be remedied on appeal. *State v. Pettis*, 520 So. 2d 250, 252 (Fla. 1988). This extraordinary writ is reserved for situations where there is a "violation of a clearly established principle of law resulting in a miscarriage of justice." *Id.* at 254. We find that the trial court did not depart from the essential requirements of law in the present case.

I. PRESERVATION, JURISDICTION, AND STANDARD OF REVIEW

Initially, the state did not preserve the arguments raised in its petition. During the proceedings below, the state did not specifically assert a "surveillance technique privilege" under section 119.071(2)(d) or cite to any chapter 119 exemption. In fact, the state did not even use the term "surveillance." During the hearing, the trial court discussed Florida Rule of Judicial Administration 2.420. The state argued that "investigative techniques" should be deemed confidential to "protect a compelling

governmental interest," referring to rule 2.420(c)(9)(A)(iii).[2] The state did not argue any other grounds for closure under rule 2.420. Further, at no point did the state put the trial court on notice that it was in any way relying on section 119.071. The state did not cite this statute, track any language from the statute, or cite any cases involving that statute. *See Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985) (stating that in order to preserve an issue for appellate review, the specific legal ground or argument relied upon for appeal must have been presented to the trial court).

Even if the state's arguments were preserved, the standard of review for all of the issues on appeal is abuse of discretion. "[I]t is within the sound discretion of the trial judge to grant or limit criminal discovery." *State v. Kuntsman*, 643 So. 2d 1172, 1173 (Fla. 3d DCA 1994). "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). *See also Miami Herald Pub. Co., a Div. of Knight-Ridder Newspapers, Inc. v. Morphonios*, 467 So. 2d 1026, 1029 (Fla. 3d DCA 1985) ("The trial court, upon ruling that a closure is warranted, must make findings of fact and must extend its order no further than the circumstances require."); *Smithwick v. Television 12 of Jacksonville, Inc.*, 730 So. 2d 795, 798 (Fla. 1st DCA 1999) (applying abuse of discretion standard in ruling on motion to seal). The public right to access judicial records or documents under common law is also reviewed for abuse of discretion. *See Nixon*, 435 U.S. at 599.

## II. DISCLOSURE TO DEFENDANT

The defendant sought unredacted copies of the search warrants and applications. Florida Rule of Criminal Procedure 3.220, which governs discovery, provides that the state must disclose "whether there has been any search or seizure and any documents relating thereto." Fla. R. Crim.

---

[2] Although not explicitly argued, there is a difference between "surveillance techniques" and "investigative techniques." Most criminal cases include "investigative techniques" of some variety, while "surveillance techniques" are less frequently utilized and are more particularized. *See United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222 n.2 (10th Cir. 2002) (stating that traditional investigative techniques include "(1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants" as well as "[p]en registers and trap and trace devices").

P. 3.220(b)(1)(H). Because the search warrants and applications were documents related to a search or seizure, the state was required to provide them to the defendant. *See id.*

"Florida's criminal discovery rules are designed to facilitate a truthful fact-finding process and to prevent surprise and trial by ambush. To ensure full and fair discovery, parties must both comply with the technical provisions of the discovery rules and adhere to the purpose and spirit of those rules in the criminal and civil contexts." *Wilcox v. State,* 143 So. 3d 359, 375-76 (Fla. 2014) (citations omitted); *see also Williams v. Florida,* 399 U.S. 78, 81 (1970) (noting that "Florida law provides for liberal discovery by the defendant against the State"). A defendant has a due process right under both the federal and Florida constitutions to defend himself against criminal charges, *see* U.S. Const. amend. V; Fla. Const. art. 1, § 9, and a discovery violation may prevent a defendant from properly preparing for trial. *See Scipio v. State,* 928 So. 2d 1138, 1147 (Fla. 2006); *Wilcox v. State,* 367 So. 2d 1020, 1023 (Fla. 1979). Due process requires that the state disclose potentially exculpatory evidence to the defendant. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Due process also requires that discovery "be a two-way street." *Wardius v. Oregon,* 412 U.S. 470, 475 (1973).

Rule 3.220 explains when a court may restrict discovery:

> The court on its own initiative or on motion of counsel shall deny or partially restrict disclosures authorized by this rule if it finds there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment resulting from the disclosure, that outweighs any usefulness of the disclosure to either party.

Fla. R. Crim. P. 3.220(e). The rule also states that "[d]isclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose the informant's identity will infringe the constitutional rights of the defendant." Fla. R. Crim. P. 3.220(g)(2).

Applying the plain language of the rule to this case, restricting the disclosure of the search warrant documents was not authorized because there was no "substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment resulting from the disclosure." *See* Fla. R. Crim. P. 3.220(e). Nor did the redacted information relate to the disclosure of a

confidential informant or the equivalent. Thus, the trial court did not depart from the essential requirements of the law in mandating the disclosure of the unredacted search warrants and applications to the defendant.

## III. DISCLOSURE TO PUBLIC

### A) THE STATE FAILED TO MEET ITS BURDEN FOR NON-DISCLOSURE

As to disclosure to third parties and the public, the state argues that the redacted information contains "surveillance techniques not widely known to the public." However, rule 2.420 does not recognize a surveillance technique exception. Nor is the "not widely known to the public" language found in section 119.071(2)(d), upon which the state now relies. Moreover, the state does not identify any grounds in the record upon which it bases it argument. In determining if closure is necessary "an evidentiary hearing should be held and findings of fact should be recorded by the judge in his order granting or refusing closure." *Miami Herald Pub. Co. v. Lewis*, 426 So. 2d 1, 7-8 (Fla. 1982). In this case, the state did not offer any evidence that the redacted information contained "surveillance techniques" under section 119.071(2)(d) nor did the state demonstrate that the alleged surveillance techniques were "not widely known." Therefore, there is no record upon which the state can rely. The state is simply advancing an "it is because I say it is" position. This sort of *ipse dixit* reasoning is insufficient to support a finding that the trial court's ruling was an abuse of discretion, much less a departure from the essential requirements of law.

Under the *Lewis* three-prong balancing test:

> Those who seek closure of a pretrial proceeding (or a restraint operating as a closure), must first provide an adequate basis to support a finding that closure is necessary to prevent a serious and imminent threat to the administration of justice. Second, those seeking closure are required to show that no less restrictive alternative measures than closure are available for this purpose. Third, those seeking closure must demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm.

*Morphonios*, 467 So. 2d at 1029 (footnote omitted).

6

As the party seeking "a restraint operating as a closure," *see id.*, the burden remained on the state to justify closure. *Barron v. Fla. Freedom Newspapers, Inc.*, 531 So. 2d 113, 116 (Fla. 1988); *Lewis*, 426 So. 2d at 8. The state has not demonstrated an abuse of discretion in that no trial court would have ruled the way this trial court has. After reviewing the redacted information in camera, the trial court found: "The state made arguments that there is a need to protect law enforcement techniques so they do not become common knowledge thus thwarting the investigative means. However, *no testimony or evidence was presented to support why this is a compelling government interest.*" (emphasis added). Likewise, there was no testimony or evidence presented to support the state's argument that the redacted information involved privileged surveillance techniques.

The trial court's finding constitutes a factual determination based on the evidence submitted to the court and a further finding that the state did not meet its burden to establish a grounds for closure. *See id.* Since an appellate court may not "substitute its judgment for that of the trial court on questions of fact," we are compelled to accept the trial court's factual determination based on the evidence that the state presented to it. *Blanco v. State*, 702 So. 2d 1250, 1252 (Fla. 1997) (citation omitted).

## B. RULE 2.420, NOT CHAPTER 119, APPLIES

To implement article I, section 24(a) of the Florida Constitution, the supreme court adopted Florida Rule of Judicial Administration 2.051, which has since been renumbered to rule 2.420. Rule 2.420, which governs public access to judicial branch records, provides that "[t]he public shall have access to all records of the judicial branch of government" except in limited circumstances. Fla. R. Jud. Admin. 2.420(a). Under this rule, "[c]opies of arrest and search warrants and supporting affidavits retained by judges, clerks, or other court personnel" "shall be confidential" "*until execution of said warrants.*" Fla. R. Jud. Admin. 2.420(c)(6) (emphasis added). Significantly, the search warrants in this case have already been executed.

Rule 2.420(c)(1)-(6) enumerates specific judicial branch records which are confidential; the records here are not such records. Additionally, rule 2.420(c)(9)(A) recognizes the following judicial records as confidential:

> (9) Any court record determined to be confidential in case decision or court rule on the grounds that

> (A) confidentiality is required to

(i) prevent a serious and imminent threat to the fair, impartial, and orderly administration of justice;

. . . .

(iii) protect a compelling governmental interest;

. . . .

(vii) comply with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law[.]

Even where one of these factors under (9)(A) is present, "the degree, duration, and manner of confidentiality ordered by the court shall be no broader than necessary" and there must be "no less restrictive measures . . . available to protect the interests." Fla. R. Jud. Admin. 2.420(c)(9)(B), (C).

Among these exceptions, in the proceedings below, the state argued only that redaction was necessary to protect "a compelling governmental interest," without presenting any evidence in support of its position. The trial court, after reviewing the redacted information in camera, made a factual determination that the redacted information did not fall within these disclosure exceptions. As previously noted, the trial court did not abuse its discretion in making this determination based on the record before it.

In its petition, the state relies heavily on chapter 119. However, chapter 119 is inapplicable because this case does not involve an agency public records request. Neither the defendant nor The Palm Beach Post made any public records request to an agency. The Post filed only a motion to intervene in the trial court proceedings. Section 119.011 defines "[a]gency" as:

any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law including, for the purposes of this chapter, the Commission on Ethics, the Public Service Commission, and the Office of Public Counsel, and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.

8

Article II, section 3 of the Florida Constitution provides: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Thus, under the separation of powers doctrine, only the judiciary has the inherent power to maintain its records and to determine the manner to access these records. *See Times Publ'g Co. v. Ake*, 660 So. 2d 255, 257 (Fla. 1995); *Locke v. Hawkes*, 595 So. 2d 32, 36-37 (Fla. 1992).

Access to judicial branch records is governed by the rules and decisions of the Florida Supreme Court, not Chapter 119, Florida Statutes. *Ake*, 660 So. 2d at 257. In *Locke*, the supreme court held that the legislature was not an agency which is subject to the Public Records Act. 595 So. 2d at 37. In *Ake*, the supreme court expanded its holding in *Locke* and held that court records maintained by the clerk of the circuit court are not subject to the inspection and copying requirements of chapter 119. 660 So. 2d at 255. As the *Ake* court explained:

> [T]he clerks of the circuit courts, when acting under the authority of their article V powers concerning judicial records and other matters relating to the administrative operation of the courts, are an arm of the judicial branch and are subject to the oversight and control of the Supreme Court of Florida, rather than the legislative branch. We should emphasize that this Court has exercised its authority and directly addressed its responsibility in this area. In *Barron v. Florida Freedom Newspapers, Inc.*, 531 So. 2d 113 (Fla. 1988), and *Miami Herald Publishing Co. v. Lewis*, 426 So. 2d 1 (Fla. 1982), we made clear that court records are presumed open and set forth standards for exemptions. In *In re Amendments to Rule of Judicial Administration 2.051-Public Access to Judicial Records*, 651 So. 2d 1185 (Fla. 1995), this Court recently implemented article I, section 24, of the Florida Constitution, by setting forth the openness of court records, the standards for exemptions, and, in an extensive commentary, an explanation of the rule's application.

*Id.* at 257. *See also WFTV, Inc. v. Wilken,* 675 So. 2d 674, 676 (Fla. 4th DCA 1996) ("*Ake* stands for the proposition that access to judicial records under the clerk's control is governed exclusively by the supreme court."). *Cf. Rameses, Inc. v. Demings*, 29 So. 3d 418, 420 (Fla. 5th DCA 2010) (applying chapter 119 in the context of a public records request to the sheriff, an agency under chapter 119).

9

The state conflates records that are exempt under chapter 119 with records that are confidential under rule 2.420. The state relies on section 119.071(2)(d), which states: "Any information revealing surveillance techniques or procedures or personnel is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution." Contrary to the state's suggestion, the judiciary has not adopted section 119.071(2)(d) via rule 2.420(c).

Chapter 119 speaks to both "exempt" records and records which are "confidential and exempt." Section 119.071(2)(d) only makes surveillance techniques *exempt*, not confidential and exempt. In contrast, rule 2.420(c)(9)(A) adopts certain laws pertaining to *confidential* records. Therefore, it does not adopt section 119.071(2)(d).

There is a difference, in the context of chapter 119, between exempt information and confidential information:

> If information is made confidential in the statutes, the information is not subject to inspection by the public and may only be released to the persons or organizations designated in the statute. . . . If records are not confidential but are only exempt from the Public Records Act, the exemption does not prohibit the showing of such information.

*WFTV, Inc. v. Sch. Bd. of Seminole*, 874 So. 2d 48, 53-54 (Fla. 5th DCA 2004).

Further, rule 2.420 contains specific references to chapter 119 when exemptions under that chapter apply. *See* Fla. R. Jud. Admin. 2.420(d)(1)(B), 2.420(d)(1)(B)(iii), (xiii). Had rule 2.420(c) intended to incorporate section 119.071(2)(d), it would have included a specific reference to that section. Courts are guided by the principle that "[n]othing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012). "Whatever temptations the statesmanship of policymaking might wisely suggest, construction must eschew interpolation and evisceration. [The judge] must not read in by way of creation." *Id.* (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533 (1947)) (alterations in original). *See also Coral Cadillac, Inc. v. Stephens*, 867 So. 2d 556, 558–59 (Fla. 4th DCA 2004) ("[W]hen a law expressly describes a situation where something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or

excluded."); *Overstreet v. Blum*, 227 So. 2d 197, 198 (Fla. 1969) (stating that a statute adopts another statute by specifically referring to the first statute).

Even accepting the state's interpretation that chapter 119 applies to this case—which it does not—certiorari relief still would be improper. "[I]t is not the purpose of an *in camera* inspection for the court to decide whether there are sufficient reasons to release requested information, but rather to decide whether there are sufficient reasons *not* to release it." *Tribune Co. v. Pub. Records, P.C.S.O. No. 79-35504 Miller/Jent*, 493 So. 2d 480, 484 (Fla. 2d DCA 1986). The state here has not demonstrated sufficient reasons not to release the documents.

"The general purpose of the Public Records Act (Chapter 119, Florida Statutes (1995)), is to open public records to allow Florida's citizens to discover the actions of their government." *Christy v. Palm Beach Cty. Sheriff's Office*, 698 So. 2d 1365, 1366 (Fla. 4th DCA 1997). "Florida courts construe the public records law liberally in favor of the state's policy of open government. If there is any doubt about the application of the law in a particular case, the doubt is resolved in favor of disclosing the documents." *Nat'l Collegiate Athletic Ass'n v. Associated Press*, 18 So. 3d 1201, 1206 (Fla. 1st DCA 2009) (citations omitted).

As the state correctly recognizes, once the state gives information to the defendant in compliance with pretrial discovery criminal rules, the disclosed information "attains the status of a public record." *Post-Newsweek Stations, Fla. Inc. v. Doe*, 612 So. 2d 549, 553 (Fla. 1992). However, the state also relies on *Post-Newsweek* for the proposition that "[d]iscovery is not intended to be a vehicle for the media to use in its search for newsworthy information." *Id.* The state's reliance on *Post-Newsweek* is misplaced inasmuch as it involves chapter 119 rather than section 2.420.

Additionally, *Post-Newsweek* recognized that the public's right to discovery materials may be limited where discovery "*seriously implicate[s] privacy interests of litigants and third parties.*" *Id.* (emphasis added) (citation omitted). In this case, no privacy interest of litigants or third parties is implicated. *Post-Newsweek* further recognized "that this state's open government policy requires that information be available for public inspection unless the information fits under a legislatively created exemption." *Id.* Here, the state did not demonstrate that the redacted information fits under any exemption. *Cf. Executive Office of the Governor v. AHF MCO of Fla., Inc.*, 43 Fla. L. Weekly D2410 (Fla. 1st DCA Oct. 29, 2018) (finding, based on an undisputed sworn affidavit of an FDLE agent,

11

that release of information pertaining to the governor's detailed schedule and travel plans would compromise the governor's safety and security).

## C. PUBLIC'S COMMON LAW RIGHT TO ACCESS SEARCH WARRANT MATERIALS

"[A]ll trials, civil and criminal, are public events and there is a strong presumption of public access to these proceedings and their records, subject to certain narrowly defined exceptions." *Barron*, 531 So. 2d at 114 (emphasis omitted). "The reason for openness is basic to our form of government. Public trials are essential to the judicial system's credibility in a free society." *Id.* at 116.

Article I, section 24(a) of the Florida Constitution codifies the public's right to access judicial records and states:

> Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution.

The Florida Supreme Court implemented this constitutional provision by enacting what is now rule 2.420. Thus, rule 2.420 is a codification of the common law right of access to public records. *See In re Amendments to Fla. Rule of Judicial Admin. 2.420-Sealing of Court Records & Docket*s, 954 So. 2d 16, 21 (Fla. 2007) (stating that "individualized sealing orders must meet the test first defined in *Barron* and subsequently codified in rule 2.420").

The United States Supreme Court has generally recognized that the public and press have a First Amendment right of access to criminal proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501 (1984) ("*Press-Enterprise I*"); *Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"). Openness of judicial processes

"gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I,* 464 U.S. at 508.

Courts in general have recognized the right to access search warrant documents as being firmly rooted in our history. In *Entick v. Carrington,* 19 How. St. Tr. 1029 (C.P. 1765), Lord Camden found general warrants illegal because of their lack of checks, such as requiring an inventory of items taken. As Justice Thomas noted in *City of West Covina v. Perkins,* 525 U.S. 234, 247 (1999), the failure to adhere to the procedures mandated in the execution of search warrants "profoundly influenced the Founders' view of what a 'reasonable' search entailed." Thus, the formalities of the execution of a search warrant, including the filing of an inventory and the return of service, are part of the architecture of a properly executed search warrant.

Further, in *Nixon,* the United States Supreme Court recognized the existence of a "common-law right of access to judicial records." 435 U.S. at 596. The Court acknowledged "a general right to inspect and copy public records and documents, including judicial records and documents." *Id.* at 597 (footnote omitted). As a general rule, judicial records are to be open to the public, in part so that citizens may "keep a watchful eye on the workings of public agencies." *Id.* at 598. *See also Baltimore Sun Co. v. Goetz,* 886 F.2d 60, 64-65 (4th Cir. 1989) (finding a common law right to access search warrant affidavits); *accord In re Newsday,* 895 F.2d 74 (2d Cir. 1990). Thus, in this case, the public has a common law right to access the search warrant documents.

Judge Conner's opinion states that the "Florida Constitution and the implementing statutes override the common law." In fact, the constitutional provision and the pertinent rules such as rule 2.420 do not override or supplant the common law as to access to court files, but rather assist its implementation by institutionalizing transparency in the Florida Constitution and the rules ensuring public access to judicial records.

"Public access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *In re Application of New York Times Co. for Access to Certain Sealed Court Records,* 585 F. Supp. 2d 83, 90 (D.D.C. 2008) (citing *United States v. Leon,* 468 U.S. 897, 917 n.18 (1984)). "[W]arrant materials are often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures." *Id.* "[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice

system and may operate as a curb on prosecutorial or judicial misconduct." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988).

In a free society governed by our constitutional framework, the default should be for transparency and disclosure. That is not to say that the state may not have compelling reasons to prevent disclosure. Far from it. In a time of security challenges, the state may request orders to prevent public disclosures. But the burden remains on the state to demonstrate, by evidence, that there is a compelling reason to inhibit the public from knowing.

For all the above reasons, we deny the petition.

*Petition denied.*

GERBER, C.J., concurs in part with opinion.
CONNER, J., concurs in part and dissents in part with opinion.

GERBER, C.J., concurring in part.

I concur with sections I., II., and III.A. of Judge Levine's opinion. However, I believe the analysis can, and therefore should, stop there. Thus, I do not join in sections III.B. and III.C of the opinion.

CONNER, J., concurring in part and dissenting in part.

I concur with the analyses and appellate conclusions in Sections I and II of the majority opinion. I also concur with the appellate conclusion in Section III A. that the record shows the State failed to demonstrate that the redacted surveillance techniques were "not widely known," and thus, the trial court properly authorized disclosure to the public. However, as to Sections III A., B., and C., my understanding of the law is different from Judge Levine and I disagree with a substantial portion of the legal analysis in those sections. Primarily, I disagree with the premise that Chapter 119 does not apply to the analysis of this case. I first discuss my disagreement with Sections III A. and B., then my disagreement with Section III C., and end with a conclusion.

*Sections III A. and B.*

In my view, by adopting rule 2.420, our supreme court intended for the judiciary to follow the system of public records disclosure and exemption requirements established by the Florida Legislature for the other two

14

branches of government in Chapter 119, in general, and various other statutes addressing specific subject matters. As a separate and coequal branch of government, the judiciary has the constitutional right to adopt a system of rules for public records of the branch that can be different from the other two branches of government. But in my view, the supreme court embraced the value of consistency in the application of the law across the three branches, to the extent it is practical to do so, when it adopted rule 2.420.

As Judge Levine points out, rule 2.420(c)(9) recognizes the following judicial records as confidential:

> (9) Any court record determined to be confidential in case decision or court rule on the grounds that
>
> (A) confidentiality is required to:
>
> . . . .
>
> (iii) protect a compelling governmental interest; [or]
>
> . . . .
>
> (vii) comply with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law[.]

Fla. R. Jud. Admin. 2.420(c)(9). Significantly, rule 2.420(f) allows a litigant to file a motion to determine the confidentiality of court records. Rule 2.420(f)(3) specifically authorizes a motion and hearing procedure for a confidentiality determination under rule 2.420(c)(9)(A)(iii) (compelling governmental interest) and 2.420(c)(9)(A)(vii) (established public policy set forth in Florida Statutes). Thus, when reading rule 2.420(c)(9) and (f)(3) together, it appears to me that in making a decision in response to a 2.420(f)(3) motion as to whether a court record should be deemed confidential at the request of a party, the trial court should declare a record to be confidential if such is required to "protect a compelling governmental interest" is demonstrated or to "comply with established public policy set forth in the Florida . . . statutes."

I agree with Judge Levine that there is a difference between exempt records and confidential records. Section 119.071, Florida Statutes, is designed to give an agency the discretion to assert a public record exemption. However, in certain instances, the legislature has taken that

15

discretion away, and declared, statutorily, that certain records are confidential. *See* § 119.071(h), Fla. Stat. (2018) (identifying records which are "*confidential* and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution") (emphasis added).

I agree with Judge Levine that under section 119.071(d), surveillance techniques are exempt, and not statutorily confidential. § 119.071(d), Fla. Stat. (2018) ("[a]ny information revealing surveillance techniques or procedures or personnel is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution"). However, because rule 2.420 is designed to allow an agency to assert an exemption, if asserted, the court system should honor the exemption and declare a record confidential, if a compelling governmental interest is shown or if the established public policy, as declared by the legislature, requires that confidentiality be maintained. That said, trial judges must also keep in mind that a statute can be trumped by constitutional rights, such as due process. In this case, the constitutional right to due process, as provided for in our criminal discovery rules, trumps confidentiality regarding disclosure of the redacted information to the defendant. I contend the public does not hold a similar trump card.

In my view, a strong statement of public policy in statutes can establish a compelling governmental interest. Section 119.071(2)(d) makes a clear legislative statement of public policy that "*[a]ny information* revealing surveillance techniques or procedures or personnel is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution." § 119.071(2), Fla. Stat. (2018) (emphasis added). Additionally, section 119.0714(1)(c), Florida Statutes (2018) provides:

> (1) **Court files**.—Nothing in this chapter shall be construed to exempt from s. 119.07(1) a public record that was made a part of a court file and that is not specifically closed by order of court, *except*:
> . . . .
>
> (c) *Any information revealing surveillance techniques or procedures or personnel as provided in s. 119.071(2)(d).*

§ 119.0714(1)(c), Fla. Stat. (2018) (emphases added). The fact that the legislature has exempted the disclosure of surveillance techniques in at least two statutes, presents a compelling argument that the court system should determine such information in court records to be confidential and not subject to public disclosure.

*Section III C.*

My problem with Section III C. of Judge Levine's opinion is that it cites and quotes Article I, section 24(a) of the Florida Constitution, but fails to address section 24(c) of Article 1. Section 24(c) specifically allows the legislature to provide for exemptions by general law. Art. I, § 24(c), Fla. Const. ("The legislature, however, may provide by general law . . . exemption of records from the requirements of subsection (a)."). Thus, it appears to me that the Florida Constitution and the implementing statutes override the common law. If my analysis above is correct (rule 2.420 was intended to mirror the exemptions in Chapter 119), then to the extent rule 2.420 is a codification of Article I, section 24, the rule likewise supplants the common law concerning the right of access to public records of the judiciary, including warrants.

*Conclusion*

The State in this case moved to block disclosure of the redacted information by asserting redaction was necessary to protect a compelling governmental interest. As discussed in Section I of the majority opinion, the State failed to preserve in the trial court the arguments raised in the certiorari petition regarding the surveillance technique exemption authorized in section 119.071(2)(d). In addition, the State failed to present proof that the redacted information was not widely known by the public. In the trial court, the State had multiple opportunities for making winning arguments to block the disclosure of the redacted information to the public. Our review of the record in light of all the exemptions listed in section 119.071 reveals there are other exemptions the State could have asserted besides the surveillance technique exception. The State failed to raise those arguments in the trial court. Additionally, the State failed to make arguments in the trial court connecting the interplay of Chapter 119 with rule 2.420. In short, the State has failed to demonstrate the trial court departed from the essential requirements of law.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

17